**M.D. WOOD, Appellant**

v.

**TAX EASE LIEN INVESTMENTS 1, LLC; Victoria L. Raisor; Kelly J. Raisor; Citizens Union Bank of Shelbyville; Asset Acceptance, LLC; Legal Recoveries, Inc., Assignee of Creditors Law Center; Commonwealth of Kentucky, Department of Revenue, and Law; Perry and Sickmeier, Inc.; Mooring Tax Asset Group; and Kentucky Property Tax Investments, Appellees.**

**No. 2013-CA-000274-MR.**

Court of Appeals of Kentucky.

Feb. 28, 2014.

---

Joseph S. Elder, II Louisville, KY, for appellant.

Donald T. Prather, Shelbyville, Kentucky M. Thurman Senn, Louisville, KY, for appellee Citizens Union Bank of Shelbyville.

Before COMBS, DIXON and VANMETER, Judges.

## OPINION

DIXON, Judge:

Appellant, M.D. Wood, appeals from an order of the Shelby Circuit Court denying his motion to intervene in an action filed by Tax Ease to enforce its Certificates of Delinquency for unpaid real estate taxes on property for which he had also purchased a tax lien. Finding no error, we affirm.

In 2003, Victoria and Kelly Raisor borrowed $45,000 from Citizens Union Bank ("CUB") to purchase property located on Woodlawn Road in Shelby County. To secure repayment on the loan, the Raisors granted CUB a mortgage lien on the property. As is typical in the lending industry, the CUB mortgage contained the following provision related to real estate taxes:

3. Taxes and Assessments. Mortgager shall pay all taxes and assessments now or hereinafter levied against the Property. In default hereof, Mortgagee may pay such taxes and assessments and Mortgager shall reimburse Mortgagee therefore together with interest thereon at the highest rate allowed in the Note.

A related provision is contained in the promissory note to CUB signed by the Raisors:

PAYMENTS BY LENDER. If you are authorized to pay, on my behalf, charges

I am obligated to pay ... then you may treat those payments made by you as advances and add them to the unpaid principal under this note....

In the years that followed, the Raisors fell behind in paying their real estate taxes. On August 11, 2010, Appellant purchased a Certificate of Delinquency for the Raisors' unpaid 2009 *ad valorem* taxes on the property, which totaled $509.63 based upon a property tax assessment of $45,000. Due to interest and penalties, Appellant paid $862.91 for the 2009 certificate.

At the time Appellant purchased the certificate for the unpaid 2009 *ad valorem* taxes, a lawsuit had already been filed against the Raisors by Tax Ease, the holder of the Certificate of Delinquency for their unpaid 2006 *ad valorem* taxes. It is from the lawsuit filed by Tax Ease that this appeal arises. Both the Raisors and CUB, as the mortgage holder on the property, were named as parties in the lawsuit but, because such was filed some ten months prior to Appellant's purchase of the 2009 certificate, he was not named in Tax Ease's original complaint. When CUB filed its answer in November 2009 setting forth its mortgage lien, the Raisors were current on their monthly principal and interest payments under the mortgage.

At some point during the proceedings in the trial court, the Raisors also fell behind on their mortgage payments. In response, CUB began to work with them to get the Certificates of Delinquency paid, as well as to get the case in such a posture that CUB could enforce the mortgage if necessary. Accordingly, CUB, with the Raisors' agreement and assistance, attempted to obtain payoff quotes from the holders of the various Certificates of Delinquency. At the same time, CUB updated its pleadings in the trial court to add other defendants having an interest in the property.

On September 26, 2012, CUB moved for leave to file an amended answer, counterclaim and cross-claim. Therein, CUB sought to dismiss the holders of the Certificates of Delinquency for the 2005 and 2008 *ad valorem* taxes as they had provided payoff quotes and had, in turn, been paid in full. CUB's motion also sought to add the U.S. Internal Revenue Department (federal tax liens) and Appellant as parties.

CUB's motion was initially scheduled to be heard on October 17, 2012, but CUB's attorney, Donald Prather, sought to reschedule such because he had been unable to secure a payoff amount from Appellant. In fact, as the trial court noted, "[t]he representative for [Appellant] when contacted repeatedly refused to provide a payoff amount for the tax bill confirmed in writing or a recorded verbal confirmation of the amount." Accordingly, in compliance with Kentucky Revised Statutes (KRS) 134.127(3)(e)(1), Prather sent a registered letter to Appellant requesting a "written September payoff, including itemization of all fees." A courtesy copy of the letter was also mailed to Appellant's son, an attorney who later appeared as his counsel in the trial court. Notably, although the letter stated that Prather was CUB's attorney, there is no dispute that the Raisors had, in the mortgage and promissory note, authorized CUB to pay on their behalf. Further, CUB points out that at that time the payoff request letter was mailed to Appellant, it was not known whether CUB or the Raisors would pay the 2009 certificate.

After Appellant failed to respond to the registered letter, Prather took a copy of the payoff demand letter and proof of mailing to the Shelby County Clerk and, pursuant to KRS 134.127(3)(e)(1), was provided a payoff quote for the 2009 Certificate of Delinquency. The Certificate was

paid the following day by a check in the amount of $1,050.01 drawn on the account of "YLB Accounting & Consulting Services," the Raisors' accountant. The county clerk, having received payment in full, completed a "release of Certificate of Delinquency" dated October 26, 2012, and placed the funds in an escrow account for distribution to Appellant.

On November 2, 2012, one week after the 2009 certificate had been paid, Appellant filed a motion to intervene in Tax Ease's lawsuit against the Raisors. Appellant claimed he was an "indispensable party to this action and he has not been joined in this action and his In Personam and In Rem actions as guaranteed by KRS 134.546(2) concerning his 2009 Shelby County Delinquent Tax Bill # 13696 which remains outstanding and unpaid." Incredibly, however, Appellant continued to refuse to disclose how much he was owed, instead describing the amount of his claim as "$RESERVED$." Further, Appellant's pleading neither challenged the validity of the county clerk's actions in accepting payment nor joined the clerk as a third-party defendant. Subsequently, in January 2012, the trial court entered an order denying Appellant's motion to intervene as moot since his certificate had been paid in full. Appellant thereafter appealed to this Court.

Appellant based his motion to intervene on Kentucky Rules of Civil Procedure (CR) 24.01(1)(b), which provides in relevant part:

(1) Upon timely application anyone shall be permitted to intervene in an action ... (b) when the applicant claims an interest relating to the property or transaction which is the subject of the action and is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless that interest is adequately represented by existing parties.

On appeal, we review the trial court's order relating to intervention for clear error. *Carter v. Smith,* 170 S.W.3d 402, 409 (Ky. App.2004). "Under this standard, this Court will only set aside the findings of fact of the trial court if those findings are clearly erroneous." *Cardiovascular Specialists, PSC v. Xenopoulos,* 328 S.W.3d 215, 217 (Ky.App.2010); *see also* CR 52.01. "The dispositive question is whether the findings are supported by substantial evidence." 328 S.W.3d at 217. In general, the trial court is given broad discretion in determining whether or not one should be permitted to intervene.

In this Court, Appellant argues that the trial court erred in ruling that his claim was mooted by payment of the certificate under the process set forth in KRS 134.127(3)(e). Appellant does not dispute that the statute permits payment to the county clerk for a Certificate of Delinquency owned by a third-party purchaser. However, Appellant contends that the process used herein was defective because (1) the registered payoff request letter sent by CUB was improper because it requested a payoff amount within three days; (2) the attestation form presented to the county clerk was invalid; and (3) neither Prather nor CUB was authorized to utilize the process set forth in KRS 134.127(3)(e).

KRS Chapter 134 governs the payment, collection and refund of taxes. If an *ad valorem* tax claim is not timely paid, it is thereafter referred to as a Certificate of Delinquency, which is transferred by the sheriff to the county clerk. *See* KRS 134.122 and KRS 134.126. After transfer to the county clerk, private persons or businesses may purchase an unpaid Certificate of Delinquency pursuant to a process described in various provisions of Chapter

134. Such purchasers are referred to as "third-party purchasers." KRS 134.010(16), KRS 134.128.

 KRS 134.127 relates to the payment of Certificates of Delinquency. Specifically at issue herein is KRS 134.127(3)(e), which sets forth the payment process when a third-party purchaser either cannot be contacted or refuses to cooperate. Said subsection provides in relevant part:

(e) 1. A person entitled to make payment under this section who is having difficulty locating the third-party purchaser of the certificate of delinquency to make payment may send a registered letter addressed to the third-party purchaser of record at the address reflected in the most recent notice received from the third-party purchaser pursuant to KRS 134.490, or if no notice has been received, at the address reflected in the records of the county clerk, indicating a desire to make payment. If the letter is returned by mail unclaimed, or if the third-party purchaser fails to respond in writing within thirty (30) days, the sender may take to the county clerk as proof of mailing the certified mail receipts stamped by the post office showing that the certified letter was mailed to the correct address and the date it was mailed. If the letter was returned, the sender shall also provide the returned letter to the clerk. The sender shall attest under oath that the letter was mailed to the correct address, and if the letter was not returned, the attestation shall also provide that the third-party purchaser did not respond in writing within thirty (30) days of the date the letter was mailed. The department shall develop attestation forms for distribution to the county clerks that include a notice

that any false statement made in the attestation shall be punishable by law. The form shall be a public record under KRS 519.010(2), subject to KRS 519.060(1)(a). The clerks' taking of such testimony shall be an official proceeding under KRS 523.010(3).

2. Upon the acceptance of proof and attestation by the county clerk that the person has failed in his or her attempt to contact the third-party purchaser about making payment, the person may pay the full amount due as reflected in the records maintained by the county clerk plus applicable interest, and the county clerk shall make the necessary assignment or release of the certificate of delinquency. The county clerk shall also discharge any notice filed pursuant to KRS 382.440 or 382.450 as provided in KRS 382.470, except the county clerk shall prepare and record an in-house release executed by the county clerk along with the proof of payment, rather than requiring the signature or writing as required by KRS 382.470. The clerk shall receive a fee pursuant to KRS 64.012 for recording the release.

3. The county clerk shall deposit the money paid in an escrow account for this specific purpose in a bank having its deposits insured with the Federal Deposit Insurance Corporation. The name of the bank in which the money is deposited shall be noted on the certificate of delinquency. The county clerk may maintain one (1) escrow account for all deposits made pursuant to this subparagraph and shall maintain a record reflecting the amount due each owner of a certificate of delinquency.

KRS 134.127(3)(e) is a remedial provision designed to provide a remedy wherein a

third-party tax lien purchaser cannot be located or refuses to provide a timely payoff amount. Further, statutes that are remedial in nature should be liberally construed in favor of their remedial purpose. *Workforce Development Cabinet v. Gaines,* 276 S.W.3d 789, 792 (Ky.2008).

Turning now to Appellant's arguments, we find no merit in his claim that the payoff request letter did not comply with KRS 134.127(3)(e)(1) simply because it asked that a payoff amount be provided within three days. The subsection requires only that a letter be sent "indicating a desire to make payment." Had Prather delivered the attestation form to the county clerk three days after mailing the registered letter, there would certainly be an issue as the statute gives the third-party purchaser thirty days to respond. Here, however, the letter was sent on September 24, 2012, and the attestation form was subsequently presented to the Shelby County Clerk thirty-one days later, on October 25, 2012. Accordingly, the request for a payoff amount within three days is wholly irrelevant to the validity of the statutory process.

■ We are similarly unpersuaded by Appellant's contention that the attestation form presented to the county clerk was invalid because Prather altered it and it was sworn to before a notary public, not the county clerk. First, the "alteration" in the pre-printed attestation form that Appellant takes issue with is as follows:

> A registered letter was mailed to the third party purchaser ~~at the address referenced in the most recent notice received from the third party purchaser or~~ at the address reflected in the records of the county clerk....

It is obvious that the language of the above clause provided two alternatives for service of the letter, and Prather merely struck through the inapplicable language

and initialed it. The "alteration" did not change the intent or meaning of the provision and, in fact, clarified where the letter was sent. Without question, striking through the inapplicable language was not an impermissible alteration as Appellant suggests, but rather a good faith and proper completion of the form.

Further, we find no language in the statute supporting Appellant's argument that the attestation form was required to be notarized by the county clerk. Subsection (3)(e)(1) states that the form shall require that the "sender ... attest under oath that the letter was mailed to the correct address, and if the letter was not returned, the attestation shall also provide that the third-party purchaser did not respond in writing within thirty (30) days of the date the letter was mailed." The statute does not specify who must administer the oath. Herein, there is no dispute that Prather's signature was notarized by a Kentucky Notary Public whose seal is on the form. Appellant does not challenge the notary's qualifications or her certificate. We believe that the attestation was properly notarized and presented to the county clerk in compliance with the statute.

■ Finally, Appellant argues that neither Prather nor CUB was a member of the statutorily delineated class permitted to utilize the remedy set forth in KRS 134.127(3)(e). Accordingly, he contends that he was entitled to ignore Prather's payoff request letter. We disagree.

There are two provisions within KRS 134.127 which make reference to who is authorized to pay a Certificate of Delinquency. KRS 134.127(1) provides, in relevant part:

> (1) (a) The following persons may pay to the county clerk at any time the total amount due on a certificate of delin-

quency or personal property certificate of delinquency that is owned by the taxing jurisdictions and in the possession of the county clerk. It shall be the responsibility of the person seeking to pay the county clerk to provide sufficient proof to the county clerk that he or she meets the requirements to pay under this paragraph. The county clerk shall be held harmless if he or she relies upon information provided and accepts payment from a person not qualified to pay under this paragraph. The county clerk may also accept partial payments from these persons:

1. The person primarily liable on the certificate of delinquency or personal property certificate of delinquency, or a person paying on behalf of the person primarily liable on the certificate, . . . and

2. The following persons may pay a certificate of delinquency or personal property certificate of delinquency that relates to the specific property in which he or she has an interest, other than a person whose only interest in the property is an interest resulting from a prior year certificate of delinquency:

a. Any person having a legal or equitable estate in real property subject to a certificate of delinquency;

b. A tenant or lawful occupant of real property, or a bailee or person in possession of any personal property; or

c. Any person having a mortgage on real property or a security interest in real or personal property.

. . . .

(b) Any other person may pay the total amount due on a certificate of delinquency that is owned by the taxing jurisdictions and in the possession of the county clerk to the county clerk after ninety (90) days have passed from the filing of the tax claims with the county clerk in accordance with KRS 134.128.

KRS 134.127(3) provides:

(3)(a) The delinquent taxpayer or any person having a legal or equitable estate in the property covered by a certificate of delinquency may, at any time, pay the total amount due to a third-party purchaser of a certificate of delinquency. The third-party purchaser may also accept payment from any other person at any time.

Appellant argues that subsection (1) applies only when the Certificate of Delinquency is owned by the taxing jurisdiction and in the possession of the county clerk. Thus, pursuant to KRS 134.127(1)(a)(1) and/or (2), CUB only had the authority to pay the 2009 Certificate while it was in the possession of the county clerk. However, Appellant contends that once he purchased the certificate, KRS 134.127(3)(a), while allowing him to accept payment from anyone, only *required* him to accept payment from the "delinquent taxpayer or any person having a legal or equitable estate in the property covered by a certificate of delinquency." Appellant argues that CUB was neither and did not have the authority to utilize the process under KRS 134.127(3)(e) to pay the county clerk.

CUB responds that Appellant has misconstrued the language of KRS 134.127(3)(e). It is CUB's position that the process under subsection (3)(e)(1) applies to anyone "entitled to make payment under this section . . . [,]" and the section referred to is the whole of KRS 134.127.[1]

1. CUB states that under Kentucky law, all of KRS 134.127 is a "section" of the Kentucky

Revised Statutes. In support thereof, CUB cites to House Bill 262 in the 2009 legislation

Thus, CUB argues that the use of the phrase "under this section" in KRS 134.127(3)(e)(1) must mean that any person authorized to make a payment under either subsection KRS 134.127(1) or subsection KRS 134.127(3) may send a payoff request letter to a third-party purchaser and thereafter pay the county clerk if no timely response is received. If the legislature intended otherwise, CUB argues, it would have used the word "subsection" rather than "section" in KRS 134.127(3)(e)(1).

We are inclined to agree with Appellant that CUB's interpretation is not altogether logical when the statute is read as a whole. Clearly, KRS 134.127(1) refers to payment of a certificate owned by the taxing jurisdiction and in the possession of the county clerk. Accordingly, there would be no instance where a person entitled to make payment would be having difficulty locating the third-party purchaser. Viewing the statute as a whole, it is unclear whether the use of the word "section" in KRS 134.127(3)(e)(1) expresses the intent of the legislature or is merely an ambiguous reference.

Notwithstanding whether CUB was authorized to pay the certificate pursuant to KRS 134.127(1), we do conclude that the payment was authorized under KRS 134.127(3)(a). There is no dispute that Prather was working with the authorization and assistance of the Raisors to obtain a payoff amount and that the subsequent payment to the county clerk came from the Raisors' accountant. Accordingly, we believe that the payment came from the "delinquent taxpayer." Contrary to Appellant's argument, CUB makes no claim that it somehow now owns the 2009 certificate. Such was paid and released by the county clerk.

We also agree with the trial court that "CUB, as mortgage holder on the Woodlawn Road property, has a 'legal or equitable' interest in the ... property and could utilize the statute." While Appellant is correct that Kentucky is a "lien theory" state, he erroneously argues that a mortgagee has no legal or equitable rights. To the contrary, in *Wiedemann v. Crawford*, 158 Ky. 657, 166 S.W. 185 (1914), Kentucky's highest court described a mortgage as being an equitable estate in the context of merger of title. The Court noted:

> Washburn on Real Property thus states the rule: "It sometimes happens that the estates of the mortgagor and the mortgagee come together in one and the same person, and the question often arises whether the two have become merged into one, or remain still distinct interests."

166 S.W. at 186. Again, it is significant to note that CUB does not now claim ownership to the 2009 certificate and has not become, contrary to Appellant's belief, "a lien holder equal to that of the Commonwealth...." Rather, the lien was simply paid and released.

Finally, we are troubled by Appellant's belief that as a winner of the "tax bill lottery" he is entitled under the statute to refuse a payoff so that he can continue to charge interest and fees. We agree with him that third-party purchasers serve a valuable purpose in that they assist taxing entities in maximizing their cash flow. Clearly, our legislature agrees: "The General Assembly recognizes that third-party purchasers play an important role in the delinquent tax collection system, allowing taxing districts to receive needed funds on a timely basis...." KRS 134.452(5). Nevertheless, we find no indication that it was

that first created KRS 134.127, which stated: "SECTION 9. A NEW SECTION OF KRS CHAPTER 134 IS CREATED TO READ AS FOLLOWS...."

the legislature's intent to allow a third-party purchaser to essentially hold property hostage for the sole purpose of increasing the interest and charges on the lien. Such is an untenable and unconscionable position, and contrary to the public policy of this Commonwealth.

Appellant bore the burden of demonstrating how his omission from the case would "as a practical matter impair or impede [his] ability to protect [his] interest." CR 24.01(1)(b). We agree that the trial court properly found that he failed in that burden, and that the matter was moot since his 2009 Certificate of Delinquency had been paid to the Shelby County Clerk and released of record. Accordingly, the motion to intervene was properly denied.

For the reasons set forth herein, the order of the Shelby Circuit Court is affirmed.

ALL CONCUR.