**Opinion filed May 31, 2012**



# In The

# Eleventh Court of Appeals

_____

## No. 11-10-00138-CR

_____

## ROGER DALE BRECHEEN, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 42nd District Court**

**Taylor County, Texas**

**Trial Court Cause No. 23302A**

## M E M O R A N D U M   O P I N I O N

The jury convicted Roger Dale Brecheen, appellant, of murder and assessed his punishment at confinement for a term of forty-eight years. We affirm.

Appellant presents five issues for review.[1] In the first issue, he challenges the sufficiency of the evidence to support the jury's rejection of self-defense. In the second issue, appellant contends that the trial court abused its discretion when it denied, without a hearing, trial

---

[1]We note that an *Anders* brief was originally filed in this case. *See Anders v. California*, 386 U.S. 738 (1967). Upon determining that this appeal was not frivolous, we abated the appeal and remanded the cause for the appointment of new counsel. The issues referenced in this opinion are from the brief filed by the appellate counsel that was appointed on remand.

counsel's motion to withdraw. Appellant complains in his third issue of the trial court's failure to instruct the jury on the lesser offense of criminally negligent homicide and in his fourth issue of the trial court's charge on felony murder. In his final issue, appellant contends that he was deprived of his right to due process by the "exceedingly contaminated crime scene."

We review a challenge to the sufficiency of the evidence, regardless of whether it is denominated as a legal or a factual sufficiency claim, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). When the sufficiency claim involves self-defense, we must also determine whether any rational trier of fact could have found against appellant on the self-defense issue beyond a reasonable doubt. *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). Once a defendant produces evidence raising the issue of self-defense, the State has the burden of persuasion (not production) to refute the self-defense claim, which requires only that the State prove its case beyond a reasonable doubt. *Id.* at 913; *see* TEX. PENAL CODE ANN. § 2.03 (West 2011).

Appellant admits that he stabbed his 27-year-old son, Michael Todd McMullen (the victim), but appellant contends that he acted in self-defense. It is undisputed that the victim died as a result of the stab wounds inflicted by appellant.

The stabbing occurred inside the residence where appellant, Wendy O'Conner, and the victim lived. O'Conner was appellant's girlfriend, but she had been having an affair with the victim for about a year. Although O'Conner testified that appellant was not aware that she and the victim were having an affair, it is apparent from appellant's statements at the scene and during a videotaped police interview that appellant suspected that O'Conner and the victim were romantically involved. In State's Exhibit No. 22, appellant tells O'Conner, "Your boyfriend done hit me with a f-----g gun." During his interview, appellant referred to the victim as "loverboy" and also said that he thought O'Conner and the victim "were f-----g."

On the night of the stabbing, appellant, O'Conner, and the victim were drinking alcoholic beverages, which generally created a volatile situation. Appellant and the victim were both

2

intoxicated. The victim got mad about something while they were at a bar called Strawberry's, but neither appellant nor O'Conner knew what caused the victim to become angry. They left Strawberry's around midnight. O'Conner testified that, on the way home, appellant got a little upset with her for taking up for the victim. When they got home, O'Conner began cooking breakfast burritos. Appellant was in the living room watching television and making sarcastic comments to O'Conner. O'Conner went into the living room, where she and appellant argued, "cussing each other." Appellant threw the remote across the room, and the argument between appellant and O'Conner intensified. Appellant got up and walked to the master bedroom, but the argument continued. While O'Conner was standing in the doorway of that bedroom, appellant grabbed her from behind and, according to O'Conner, started choking her. The victim then got involved; he walked toward appellant and O'Conner and told appellant to stop.

Evidence showed that the victim had stabbed appellant during an altercation the preceding year and that, just hours before the instant offense, appellant had given the victim a Smith & Wesson switchblade knife as an early Christmas present. O'Conner testified that, when the victim told appellant to let O'Conner go, appellant asked the victim, "[W]hat are you going to do, stab me?" The victim replied, "[N]o, we're not going to do that this time." The victim took his knife and cell phone out of his pocket and handed them to O'Conner. Appellant and the victim "had words," but O'Conner did not hear either of them threaten the other. This type of argument was common in their household.

O'Conner testified that the victim went outside and that she asked appellant to leave. Appellant refused. The victim came back inside and walked to the back bedroom, possibly slamming the door. Appellant said, "[F]--k this s--t. I'm not dealing with it." Appellant headed into the back bedroom, and O'Conner went outside to call 911. While on the phone, O'Conner heard a window break. Then she saw the victim coming out of the back bedroom; he was "crab crawling"—on his hands and feet crawling backwards. O'Conner heard the victim ask appellant, "[W]hy did you stab me?" O'Conner helped the victim up, and they walked to the street, where the victim collapsed.

Officer David Cox was rounding the corner about that time. Other officers and emergency personnel arrived shortly thereafter. The victim was still alive, and efforts were made to save his life. The victim was transported to the hospital, where he died a short time later.

The autopsy revealed that the victim had been stabbed three times: twice in the abdomen and once in the thigh. The fatal wound was to the lower abdomen; it severed the iliac artery and was the major source of internal bleeding. The medical examiner, Dr. Nizam Peerwani, testified that the victim's abdominal cavity was filled with approximately five pints of blood from the internal bleeding. None of the knives located at the scene could be identified as the murder weapon. O'Conner maintained that appellant carried a knife in his pocket like the one he gave the victim and that appellant had sharpened his knife that evening. Appellant initially told officers that he did not have a knife like that or a pocket knife of any sort. He later told officers that he used to have a knife similar to the one he gave the victim but that he had sold it to a coworker in Laredo. Officers searched the area around the crime scene but did not find the knife that O'Conner attributed to appellant.

Appellant maintained that the victim attacked him and that he was merely defending himself from the victim. Appellant said that, as appellant walked around the corner, the victim hit him in the face with the butt of an air rifle (a pump-type BB gun that belonged to O'Conner's young son). Appellant said that he fell back or backed into the kitchen, grabbed "something" from the kitchen counter, and defended himself. He only remembered stabbing the victim one time and said he dropped the knife in the kitchen. The police found no physical evidence of any scuffle occurring in the kitchen, which was small; there were things sitting out, undisturbed, on the kitchen counter that would have been easily disturbed.

When police arrived, appellant had an open wound on his face that was bleeding. The evidence showed that the wound on appellant's face was consistent with appellant's explanation and that an air rifle was found lying on the floor in the back bedroom. Before the fight, the air rifle had not been lying on the floor; O'Conner had put it between the window and the entertainment center in the back bedroom when she cleaned that room. After appellant arrived at the police station, Detective Jeffery Guy Bell documented other minor injuries on appellant's arms, elbow, chest, and neck. Appellant was not sure how these injuries occurred.

Section 9.32 of the Penal Code provides in relevant part that a person is justified in using deadly force against another (1) if he would be justified in using force under Section 9.31 and (2) when and to the degree he reasonably believes the deadly force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force. TEX. PENAL CODE ANN. §§ 9.31, 9.32(a)(1), 9.32(a)(2)(A) (West 2011). From the evidence presented at trial,

4

a rational jury could have found that appellant's use of deadly force was not justified because the jury disbelieved appellant's version of the events in light of various inconsistencies, because appellant's belief that deadly force was immediately necessary to protect himself was not a reasonable belief, or because the victim had not attempted to use deadly force against appellant. After reviewing all of the evidence, we hold that a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt and also could have found against appellant on the self-defense issue beyond a reasonable doubt. Appellant's first issue is overruled.

In his second issue, appellant contends that the trial court abused its discretion when it denied, without a hearing, trial counsel's motion to withdraw. In the motion, trial counsel asserted that good cause existed for withdrawal because trial counsel had represented the victim in 1998 when the victim had been charged with aggravated assault with a deadly weapon. Trial counsel stated that there was a "likelihood of potential conflict of interest in zealously advocating for Defendant in presenting evidence of the decedent's propensity for violence on prior occasions." The record shows that trial counsel filed the motion to withdraw as counsel less than two weeks prior to the trial and over one year after being appointed to represent appellant. The trial court denied the motion. There is no record of any hearing on the motion. The record shows that trial counsel filed a motion in limine regarding any mention of him representing the victim. The trial court granted the motion in limine, and the subject was not discussed again.

We find no error in the trial court's failure to conduct a hearing on counsel's motion to withdraw under the circumstances of this case. Trial counsel did not file the motion in a timely fashion. *See King v. State*, 29 S.W.3d 556, 566 (Tex. Crim. App. 2000) (stating that the right to counsel may not be manipulated so as to obstruct the judicial process or interfere with the administration of justice). Nor did trial counsel allege facts indicating that there was a conflict of interest. Generally, when the defense brings a potential conflict of interest to the attention of the trial court, the trial court has an obligation to investigate and determine "whether the risk [of the conflict of interest is] too remote to warrant separate counsel." *Holloway v. Arkansas*, 435 U.S. 475, 484 (1978). Trial counsel's prior representation of the murder victim did not conflict with or in any manner hinder counsel's representation of appellant. *See Harrell v. State*, No. 12-00-00356-CR, 2002 WL 31656213 (Tex. App.—Tyler Nov. 26, 2002, pet. ref'd) (not designated for

publication). Trial counsel did, in fact, introduce evidence of the victim's propensity for violence and of the victim's aggressive nature. Appellant's second issue is overruled.

In his third issue, appellant contends that he suffered egregious harm from the trial court's failure to instruct the jury on the lesser offense of criminally negligent homicide. Appellant acknowledges that he did not request such a charge or object to its omission. A trial court has no sua sponte duty to include a jury charge on a lesser included offense. Because appellant did not object to the omission of a charge on criminally negligent homicide or request its inclusion, appellant did not preserve this issue for review. *Kinnamon v. State*, 791 S.W.2d 84, 95 (Tex. Crim. App. 1990), *overruled on other grounds by Cook v. State*, 884 S.W.2d 485, 491 (Tex. Crim. App. 1994); *Thomas v. State*, 701 S.W.2d 653, 656 (Tex. Crim. App. 1985); *Castellon v. State*, 297 S.W.3d 813, 815 (Tex. App.—Amarillo 2009, pet. ref'd). Appellant's third issue is overruled.

In the fourth issue, appellant contends that he suffered egregious harm from the inclusion of a "felony murder charge" in the trial court's charge to the jury. While we agree that it would have been erroneous to include a charge on felony murder in this case, our review of the jury charge reveals that no felony murder charge was included. The elements of the offense of murder are set out in TEX. PENAL CODE ANN. § 19.02(b) (West 2011). Felony murder refers to the commission of murder as set out in Section 19.02(b)(3). *Contreras v. State*, 312 S.W.3d 566, 583–84 (Tex. Crim. App. 2010). The indictment and the jury charge in this case included the elements of murder as set out in Section 19.02(b)(1) and Section 19.02(b)(2), not Section 19.02(b)(3). Appellant's fourth issue is overruled.

In his final issue, appellant contends that he was deprived of his right to due process by the sloppy police work and the exceedingly contaminated crime scene. Appellant does not suggest any bad faith on the part of the officers; instead, he points to the failure of the police to immediately secure the scene, to O'Conner entering the house while appellant and the officers were outside, to Officer Tyson Kropp washing his hands in the kitchen sink, and to the failure of the police to seize the air rifle and have it tested for appellant's blood.

The officers involved in this case admitted at trial that they had made mistakes in this case. The officers did not secure the crime scene until they learned of the victim's death. However, when the police arrived at the scene, the victim was still alive and their concern was to

help him.  Officer David Cox explained that that is why he sent O'Conner into the house to get some towels.  O'Conner testified that she did not disturb anything when she went inside.

Officer Kropp had to forcibly subdue appellant to take him into custody.  During the struggle, appellant's blood (presumably from the bleeding wound on his face) got on Officer Kropp's hands.  Appellant subsequently informed the officers that he had hepatitis C.  Concerned about being exposed to hepatitis C, Officer Kropp went into the house and washed his hands in the kitchen sink.  The scene was later secured, and a knife from the kitchen sink was taken into evidence.  That knife, however, was excluded by Dr. Peerwani as the murder weapon because the blade was too small to have made the stab wounds and because it was serrated.

We cannot hold under the circumstances of this case that the crime scene was so contaminated or the police work so sloppy as to deprive appellant of his right to due process. There is no indication that the officers acted in bad faith or that any of the evidence not preserved was potentially exculpatory or potentially useful.  *See Ex parte Napper*, 322 S.W.3d 202, 229–40 (Tex. Crim. App. 2010).  Appellant's fifth issue is overruled.

The judgment of the trial court is affirmed.


JIM R. WRIGHT

CHIEF JUSTICE

May 31, 2012

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.


Published per motion granted June 28, 2012.


7