CAUSE NO. **224·15**

ORIGINAL

IN THE COURT OF CRIMINAL
APPEALS AT AUSTIN, TEXAS

RECEIVED IN
COURT OF CRIMINAL APPEALS

APR 20 2015

Abel Acosta, Clerk

KEITH WAYNE EDWARDS

PETITIONER PRO SE

VS.

THE STATE OF TEXAS

PETITIONER IN CAUSE NO. F12-16761-K

FROM THE

4TH JUDICIAL DISTRICT COURT

OF

DALLAS COUNTY, TEXAS

AND THE

COURT OF APPEALS FOR THE

FIFTH DISTRICT OF TEXAS

IN DALLAS, TEXAS

FILED IN
COURT OF CRIMINAL APPEALS

APR 22 2015

Abel Acosta, Clerk

## PETITION FOR DISCRETIONARY REVIEW

KEITH WAYNE EDWARDS #1877647
T.D.C.J. UNIT RAMSEY 1
1100 FM 655
ROSHARON, TEXAS 77583

(COVER)

# TABLE OF CONTENTS

TABLE OF CONTENTS........................................ 1
STATEMENT REGARDING ORAL ARGUMENT........................ 2
STATEMENT OF THE CASE.................................... 2
GROUND FOR REVIEW....................................... 2-5
PRAYER FOR EWVIEW....................................... 6
CERTIFICATE OF SERVICE.................................. 6

## CASE LAWS

BRECHEEN V. STATE, 372 S.W.3d 706 (Tex. App.-Eastland............ 5
BROOKS V. STATE, 323 S.W.3d 893 (Tex. Crim. App................. 4
CHAMBERS V. STATE, 805 S.W.2d 459............................... 3
EX PARTE MAYBRY, 137 S.W.3d 58 (Tex. Crim. App................. 3
GONZALEZ V. STATE, No. 05-13-00630-CR, Tex. App. LEXIS 7584, *15
                (Tex. App.-Dallas July 14, 2014, no pet.h. 5
ISASSI V. STATE, 425 S.W.3d 900 ............................... 3
JACKSON V. VIRGINIA, 443 U.S. 307............................. 4
MONTGOMERY V. STATE, 369 S.W.3d 188.......................... 3
SAXTON V. STATE, 804 S.W.2d 910.............................. 3&5
THORTON V. STATE, 425 S.W.3d 287............................. 3
WISE V. STATE, 364 S.W.3d 900................................ 3

## TEXAS CONSTITUTION

TEX. CONST. ART. V. § 5(a), 6(a)............................ 4

## TEXAS RULES

TEXAS RULES APP. PROC. 66.3(a),(c),(f)...................... 3

## TEXAS PENAL CODE

TEXAS PENAL CODE.203....................................... 5
TEXAS PENAL CODE 9.31 9.32................................. 5

CAUSE NO._____

| | | |
|---|---|---|
| KEITH WAYNE EDWARDS | § | PETITION IN CAUSE NO. F12-16761-K |
| | § | FROM THE 4TH DISTRICT COURT OF |
| VS. | § | DALLAS COUNTY, TEXAS AND THE |
| | § | FIFTH COURT OF APPEALS DALLAS |
| THE STATE OF TEXAS | § | TEXAS |

## PETITION FOR DISCRETIONARY REVIEW

TO THE HONORABLE JUSGES OF THE COURT OF CRIMINAL APPEALS:

COMES NOW, Keith Wayne Edwards, Petitions the Court to review the Judgment affirming his conviction for "THE EVIDENCE IS INSUFFICIENT TO SUPPORT PETITIONER'S CONVICTION FOR MANSLAUGHTER BECAUSE NO RATIONAL FACT FINDER COULD HAVE FOUND AGAINST HIM ON HIS CLAIM OF SELF-DEFENSE." Texas Penal Code no. 9.31, 9.32, in Cause no. F12-16761-K.

### STATEMENT REGARDING ORAL ARGUMENT

The ground(s) for review set forth in this petition concerns the conflicting opinions of different courts of appeals on the same point od law, and oral argument would be helpful in distinguishing these authorites and arriving at the approch that is consistent with prior opinions of this court.

### STATEMENT OF THE CASE

Petitioner was indicted for the murder of Samuel Anderson. (CR: 19). Petitioner plead not guilty. (RR3: 15; CR: 107). A jury convicted him of the lesser-included offense of manslaughter. (RR6: CR: 107, 125). After a punishment hearing, the jury sentenced Petitioner to 11 years confinement in the Texas Department of Criminal Justice, assessed $264 in court costs, and did not assess a fine. (CR: 107, 118). Petitioner filed a timely notice of appeal. (CR: 127).

### GROUND FOR REVIEW

WAS THE EVIDENCE SUFFICIENT TO SUPPORT PETITIONER'S CONVICTION FOR MANSLAUGHTER? BECAUSE NO RATIONAL FACT-FINDER COULD HAVE FOUND HIM GUILTY ONLY OF SELF-DEFENSE.

Petitioner asserts the evidence is insufficent to support the conviction because no rational juror could have found against him on his claim of self-defense. When Petitioner urges a sufficency challenge on the basis of his self-defense, we do not look to whether the State presented evidence that refuted a theory of self-defense. Instead, we determine, after viewing all the evidence in the light most favorable to the verdict, whether any rational fact finder (1) would have found the essential elements of the offense beyond a reasonable doubt, and (2) would have found against Petitioner on the self-defense issue beyond a reasonable doubt. SAXTON V. STATE, 804 S.W. 2d 910, 914 (Tex. Crim. App. 1991). The jury, as the fact finder, is entitled to judge the credibility of the witnesses, and can choose to believe all some or none of the testimony presented by the parties. CHAMBERS V. STATE, 805 S.W. 2d 459, 461 (Tex. Crim. App. 1991); see also WISE V. STATE, 364 S.W. 3d 900, 903 (Tex. Crim. App. 2012) ("The factfinder exclusively determines the weight and credibility of the evidence."). We defer to the jury's determinations of credibility, and may not substitute our judgment for that of the jury. THORTON V. STATE, 425 S.W. 3d 287, 303 (Tex. Crim. App. 2014), ISASSI V. STATE, 330 S.W. 3d 633, 638 (Tex. Crim. App. 2010). Our duty is to ensure the evidence presented supports the jury's verdict and the State has presented legally sufficient evidence establishing the offense. MONTGOMERY V. STATE, 369 S.W. 3d 188, 192 (Tex. Crim. App. 2012).

With such and pursuant to Texas Rules App. Proc. 66.3 (a),(c) (f) the court of Criminal Appeals may consider in deciding to grant Discretionary Review: (a) Whether a Court of Appeals has decided an issue which conflicts with another court of appeals decision on the same issue; (c) Whether a Court of Appeals decision conflictes with the applicable decision of the Court of Criminal Appeals, (f) Whether the Court of Appeals has so far departed from the accepted and usual course of Judicial proceedings, or so far sanctioned such a departure by a lower court, as to call for an exercise of the Court of Criminal Appeals power of supervision. Petitioner proffers that the first Court of Appeals interpreted a Statute which contredicts the Court of Criminal Appeals decision in EX PARTE MAYBRY, 137 S.W.3d 58 (Tex. Crim. App. 2004).

Legal sufficiency of the evidence is measured by the standard enunciated by the United States Supreme Court in **JACKSON V. VIRGINIA**, i.e., "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. 307, 319, n.12 (1979). The **JACKSON** standard is the only standard a reviewing court should apply to determine if the State proved each and every element of the offense beyond a reasonable doubt. **BROOKS V. STATE**, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.). The reviewing court must defer to the fact finder's credibility and weight determinations since the trier of fact is the sole judge of the credibility of a witness's testimony. Id. at 899.

For purposes of Tex. Const. Art. V. § 5(a), 6(a), although a decision of the court was to be conclusive on all questions of fact, the Texas Court of Criminal Appeals had the authority to determine questions of law, including the standard of review that an intermediate Appellate Court must use in conducting factual review. The court was bound to follow the majority holding and applied the proper sufficiency review to Petitioner's styled as legal or factual sufficiency challenges concerning the elements of a criminal offense. The jury could have found that Petitioner had a motive to stab the victim from evidence that he had words with the victim during the ride on the train before the victim was stabbed to death. Viewing the totality of the circumstances in the light most favorable to the verdict, the jury could have rationally found each element of Involuntary Manslaughter was proven beyond a reasonable doubt.

Under the **JACKSON V. VIRGINIA**, standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational factfinder could have found that each essrntial element of the charged offense was proven beyond a reasonable doubt. Viewed in the light most favorable to the verdict, the evidence is insufficient under this standard in two circumstances: (1) The record contains no evidence or merely a modicum of evidence, probative of an element of the offense: or (2) The evidence conclusively establishes a reasonable doubt. That the no evidence rule is simply inadequate to protest against

4

misapplications of the constitutional standard of reasonable doubt is readily apparent. A mere modicum constitutional standard of reasonable doubt is readily apparent. A mere modicum of evidence may satisfy a no evidence standard, but it could not seriously be agreed that a modicum of evidence could by itself rationally support a conviction beyond a reasonable doubt. A hypothetical example of this second circumstance was described: The store clerk at trial identified A as the robber. A properly authenticated surveillance videotape of the event clearly shows that B committed the robbery. But, the jury convicted A. It was the jury's preprogative to believe the convenience store clerk and disregard the video. But based on all the evidence the jury's finding of guilt is not a rational finding. The same in Petitioner's case the video showed the victim kicking at Petitioner from the door way of the train, so when Petitioner thrust his hand in the door way he didn't think he really did anything so he ran off thinking that the victim was going to chase him down and beat him up. There was no intention of really killing anyone, just to scare him that was all.

Self-defense is a justification defense to prosecution. TEX. PENAL CODE § 2.03. If a person is justified in using force against another person under Section 9.31 of the Penal Code, then he may use deadly force when and to the degree he reasonably believes it is immediately necessary to protect himself against the other person's use or attempted use of deadly force. TEX. PENAL CODE § 9.31, § 9.32.

Once Petitioner produces evidence raising self-defense, the State has the burden of persuasion to refute the self-defense claim. **BRECHEEN V. STATE**, 372 S.W. 3d 706, 708 (Tex. App.-Eastland 2012, pet. ref'd). When reviewing a challenge to the sufficiency of the evidence in a case involving self-defense, the reviewing court must determine whether a rational trier of fact would have found the essential elements of the charge beyond a reasonable doubt and also would have found against Petitioner on the self-defense issue beyond a reasonable doubt. **SAXTON V. STATE**, 804 S.W. 2d 910, 913-14 (Tex. Crim. App. 1991); **BRECHEEN**, 372 S.W. 3d at 707-80 see also **GONZALEZ V. STATE**, No. 05-13-00630-CR, 2014 Tex. App. LEXIS 7584, *15 (Tex. App.-Dallas July 14, 2014, no pet. h.)(not designated for publication).

5

## PRAYER FOR RELIEF

For the reasons herein alleged, Petitioner was denied a fair trial in Cause No. F12-16761-K therefore, Petitioner prays this Honorable Court grant this petition, and upon reviewing the judgment entered below, reverse this cause and remand it for release.

Respectfully Submitted

Keith Wayne Edwards #1877647
Ramsey 1 Unit
1100 FM 655
Rosharon, Texas 77583

## CERTIFICATE OF SERVICE

This is to certify that a copy of Petitioner's Petition for Discretionary Review was sent to the Clerk of the Court of Appeals, Austin, Texas.Delivered by first class mail to the Clerk of the Court of Criminal Appeals, Supreme Court Building, P.O. Box 12308 Austin, Texas 78711.

Keith Wayne Edwards #1877647

6

AFFIRM; and Opinion Filed January 21, 2015.



In The

# Court of Appeals
## Fifth District of Texas at Dallas

No. 05-13-01194-CR

KEITH WAYNE EDWARDS, Appellant
V.
THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 4
Dallas County, Texas
Trial Court Cause No. F12-16761-K

# MEMORANDUM OPINION
Before Chief Justice Wright, Justice Francis, and Justice Fillmore
Opinion by Justice Fillmore

A jury convicted Keith Wayne Edwards of manslaughter and assessed punishment of eleven years' imprisonment. Edwards asserts the evidence is insufficient to support the conviction because no rational juror could have found against him on his self-defense claim. We affirm the trial court's judgment.

## Background

At approximately 6:30 p.m. on October 24, 2012, Jesus Villanueva was on a DART "green line" train traveling from downtown Dallas toward the Buckner Station. According to Villanueva, two men on the train, Samuel Anderson and Frank Ramirez, were drunk and "being loud."[1] Edwards sat down by the two men but, at some point, moved and sat down by

---

[1] A sample of Anderson's blood taken at the hospital showed a blood alcohol content of .241.

Villanueva. Two teenaged girls got on the train, and Ramirez "started messing" with the girls by talking to them and "tapping" them. Anderson attempted to make Ramirez stop bothering the girls.

Villanueva testified that Edwards leaned over and said, "watch this" to Villanueva and another passenger. Edwards then moved to a seat by Anderson and Ramirez. Villanueva thought Edwards, who was a "pretty big guy," was going to punch one of the men and get off the train. Using his cellphone, Villanueva started recording the activities on the train because he thought something funny was going to happen. The recording made by Villanueva was played for the jury.

The recording shows Edwards sitting behind Anderson and across the aisle, but one seat back, from Ramirez. Anderson and Ramirez were speaking to each other, but neither man was speaking to Edwards. Edwards then turned toward the window of the train. Villanueva testified that Edwards turned, "like nobody would see him," and started "digging" in his bag. It looked to Villanueva as if Edwards was taking something out of his bag. However, Villanueva did not actually see Edwards remove anything from his bag because of an obstruction on the train and the recording does not show Edwards removing anything from his bag.

As the train approached the Lake June Station, Edwards reached out his hand toward Ramirez and started talking to Ramirez. Villanueva could not hear what Edwards said to Ramirez, and the conversation is not audible on the recording. Anderson had his back to, and was not paying attention to, Edwards. At this point, the recording was interrupted when Villanueva received a text.

According to Villanueva, as the train pulled into the Lake June Station, Edwards stood up and started "going back and forth" with Ramirez. The recording shows Edwards and Ramirez talking heatedly to each other, and Edwards then reaching into the pocket of his pants.

Villanueva testified, and the recording shows, that Edwards swung his bag at Ramirez. Anderson stood up between the two men and prevented Edwards from hitting Ramirez with the bag. Anderson then chased Edwards out of the door of the train, throwing a punch that did not appear to contact Edwards. Villanueva testified Anderson and Edwards continued to "go back and forth," with Edwards standing outside the train. Anderson was telling Edwards to "back off" and kicking at Edwards. The recording shows Anderson, wearing an orange backpack and with a cigarette in one hand, kicking and throwing punches out of the door of the train. Villanueva testified it appeared Edwards pulled Anderson off the train. Villanueva looked out of the train and saw Anderson laying on the ground, bleeding from his neck. According to Villanueva, the first act of aggression between the men was Edwards's swinging his bag at Ramirez. In Villanueva's opinion, although Anderson was drunk, he did not hurt anybody and nothing happened that justified him being killed

Evelyn Lazo exited the train at the Lake June Station and saw a man get off the train. The man looked a little aggressive, "like he was almost ready to fight." Lazo saw the man swing his arm up, and she thought he was trying to punch someone inside the train in the face. She then saw blood spew out of Anderson's neck. Anderson fell on the ground, and the other man ran off. A recording from the Lake June Station platform was played for the jury. The platform recording shows Edwards exiting the train, but immediately turning around. Edwards stepped in and out of the door of the train and appeared to be yelling. Edwards then swung his arm, and Anderson fell out of the train. A pool of blood appeared around Anderson. Edwards immediately ran toward the back of the train.

Edwards testified that on October 24, 2012, he spent the day looking for a job. He boarded the "green line" train at the Martin Luther King Station and intended to ride the train to the Buckner Station. When he boarded the train, he noticed a "commotion." The train was

–3–

crowded and he sat down without realizing the person next to him, Ramirez, was creating the problem. According to Edwards, Ramirez and Anderson were drinking out of a bottle, "talking bad," and calling people names, such as the "n-word" and the "b-word." After a "stop or so," Edwards decided to change seats. When Edwards decided to move seats, neither Anderson nor Ramirez had said anything to him. Edwards sat down across the aisle from Villanueva. According to Edwards, the recording made by Villanueva did not capture everything that happened on the train.

At some point, Edwards decided to check whether he had left something in his first seat. When he did, Ramirez's foot kicked him and Ramirez said something. While evidently gesturing for the jury, Edwards stated he took his bag and "did that" after Ramirez's foot kicked him.[2] Anderson opened his orange backpack, showed Edwards a small caliber pistol, and said "I'll shoot your black ass." Edwards then returned to the seat by Villanueva. According to Edwards, he said, "what's this" to Villanueva because he did not know what he "done got into."

As the train approached the Lake June Station, Edwards moved back to a seat by Ramirez and Anderson. Edwards admitted he then initiated contact with Ramirez, probably because of something Ramirez said. Edwards does not remember what he said to Ramirez. Edwards swung his bag at Ramirez, and immediately got off the train at the Lake June Station. Edwards realized he had left his chicken dinner behind and attempted to re-board the train. Anderson started kicking and swinging at Edwards, preventing him from getting back on the train. According to Edwards, Anderson had given his backpack to Ramirez. Edwards saw Anderson reaching for the backpack and thought Anderson was going to get the gun. Edwards took a piece of broken glass that he had found on the train from his pocket and jabbed Anderson with it. Edwards knew he made contact with Anderson.

---

[2] The record does not reflect what movement Edwards indicated he made with his bag during this exchange with Ramirez.

Edwards admitted his conduct was reckless, but denied he intended to harm or kill Anderson. Edwards thought his action was reasonable and necessary because he was in fear for his life. However, Edwards admitted he was provoked by Anderson calling him names and kicking him and that maybe he jabbed at Anderson because he was angry. Edwards ran away because he believed Ramirez had the backpack, did not know what Ramirez intended to do, and was in fear for his life. When Edwards was interviewed by the police following his apprehension, he did not tell the police that Anderson had a gun.

Anderson's left external and internal carotid arteries were severed by Edwards's jab with the piece of broken glass, and he died following surgery. Edwards was indicted for murder. The jury convicted Edwards of the lesser included offense of manslaughter and sentenced him to eleven years' imprisonment.

## Analysis

Edwards asserts the evidence is insufficient to support the conviction because no rational juror could have found against him on his claim of self-defense. When an appellant urges a sufficiency challenge on the basis of his claim of self-defense, we do not look to whether the State presented evidence that refuted a theory of self-defense. Instead, we determine, after viewing all the evidence in the light most favorable to the verdict, whether any rational fact finder (1) would have found the essential elements of the offense beyond a reasonable doubt, and (2) would have found against the appellant on the self-defense issue beyond a reasonable doubt. *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). The jury, as the fact finder, is entitled to judge the credibility of the witnesses, and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); *see also Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012) ("The factfinder exclusively determines the weight and credibility of the evidence."). We defer to the

jury's determinations of credibility, and may not substitute our judgment for that of the jury. *Thornton v. State*, 425 S.W.3d 289, 303 (Tex. Crim. App. 2014); *Isassi v. State*, 330 SW.3d 633, 638 (Tex. Crim. App. 2010). Our duty is to ensure the evidence presented supports the jury's verdict and the State has presented legally sufficient evidence establishing the offense. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012).

The initial burden to produce evidence supporting self-defense rests with the defendant. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *Saxton*, 804 S.W.2d at 913. Once the defendant produces some evidence, the State bears the ultimate burden of persuasion to disprove the raised defense. *Zuliani*, 97 S.W.3d at 594; *Saxton*, 804 S.W.2d at 913–14. This burden of persuasion does not require that the State produce evidence refuting self-defense, but it does require that the State prove its case beyond a reasonable doubt. *Zuliani*, 97 S.W.3d at 594; *Saxton*, 804 S.W.2d at 913. The issue of self-defense is a fact issue to be determined by the jury, which is free to accept or reject any defensive evidence on the issue. *Saxton*, 804 S.W.2d at 913–14. If the jury finds the defendant guilty, then it implicitly finds against the defensive theory. *Id.* at 914.

A person commits manslaughter if he recklessly causes the death of another. TEX. PENAL CODE ANN. § 19.04(a) (West 2011). As relevant to this case, a person acts recklessly, or is reckless, with respect to the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. *Id.* 6.03(c). The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint. *Id.*

Edwards admitted he was involved in an altercation with Ramirez and Anderson on the train and that, while attempting to re-board the train to retrieve his chicken dinner, he jabbed

Anderson with a piece of broken glass. The wound Edwards inflicted caused Anderson's death. Edwards admitted his conduct was reckless, but denied he intended to kill Anderson. Viewing the evidence in the light most favorable to the verdict, the jury could have rationally concluded beyond a reasonable doubt that Edwards was aware of the risk that a piece of broken glass used to inflict injury could cause death, and Edwards consciously disregarded that substantial and unjustifiable risk when, during the heat of an argument, he jabbed at Anderson with the piece of broken glass. We conclude a rational jury could have found all essential elements of the offense of manslaughter beyond a reasonable doubt.

We next turn to whether a rational juror could have rejected Edwards's claim he acted in self-defense. It is a defense under the penal code that the conduct at issue was justified. TEX. PENAL CODE ANN. § 9.02 (West 2011). A person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force. *Id.* § 9.31(a). A person is justified in using deadly force against another if the actor would be justified in using force against another under section 9.31 and when and to the degree the actor reasonably believes that deadly force is immediately necessary to protect the actor against the other's use or attempted use of unlawful deadly force. *Id.* § 9.32(a).

Edwards testified Anderson had a pistol in his backpack and said he would shoot Edwards. According to Edwards, when he was trying to re-board the train to retrieve his chicken dinner, Anderson was kicking him and calling him names. Edwards testified that Anderson had given the backpack to Ramirez, and Edwards saw Anderson reach for the backpack. Edwards thought Anderson was going to shoot him and jabbed Anderson with the piece of broken glass. Although Edwards testified he did so because he was in fear for his life, he also admitted he was

angry because Anderson was kicking him and calling him names. Further, following his apprehension, Edwards did not tell the police that Anderson had a gun.

Villanueva testified the first act of aggression between Edwards, on the one hand, and Ramirez and Anderson, on the other, was Edwards swinging his bag at Ramirez. The recording made by Villanueva shows Edwards sitting by Ramirez and Anderson. Neither man was talking to or paying any attention to Edwards. Edwards then reached out toward Ramirez and said something. Ramirez and Edwards got into a heated exchange. Edwards reached into his pocket and then swung his bag at Ramirez. Anderson prevented Edwards from hitting Ramirez with the bag and threw a punch as Edwards left the train. Wearing an orange backpack and holding a cigarette in one hand, Anderson continued to throw kicks and punches out of the door of the train. The recording from the train station showed Edwards exiting the train and immediately turning around. Edwards attempted to re-board the train and then jabbed his arm into the door of the train. Anderson immediately fell out of the train onto the platform and a pool of blood appeared around him.

The jury was presented with conflicting evidence about the events leading up to Anderson being stabbed with the piece of broken glass. The jury, as the sole judge of the credibility of witnesses and the weight to be given to their testimony, was free to disbelieve Edwards's version of events, including his testimony that Anderson had a gun, threatened to shoot him, and was reaching for the gun when Edwards jabbed him with the piece of broken glass. *See Wise*, 364 S.W.3d at 903. After viewing all the evidence in the light most favorable to the verdict, we conclude a rational jury could have found against Edwards on the self-defense issue beyond a reasonable doubt. *See Saxton*, 804 S.W.2d at 914.

We have determined a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt, and could have found against Edwards on the self-defense

–8–

issue beyond a reasonable doubt. *See id.* Accordingly, we conclude the evidence supporting the jury's verdict is sufficient. We resolve Edwards's sole issue against him and affirm the trial court's judgment.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

131194F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

KEITH WAYNE EDWARDS, Appellant

No. 05-13-01194-CR    V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 4, Dallas County, Texas,
Trial Court Cause No. F12-16761-K.
Opinion delivered by Justice Fillmore, Chief Justice Wright and Justice Francis participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED.**

Judgment entered this 21st day of January, 2015.