

**NUMBER 13-24-00502-CR**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI – EDINBURG**

FRANCISCO MUNIZ,                                                     **Appellant,**

**v.**

THE STATE OF TEXAS,                                                 **Appellee.**

**ON APPEAL FROM THE 357TH DISTRICT COURT
OF CAMERON COUNTY, TEXAS**

## MEMORANDUM OPINION

**Before Justices Silva, Peña, and West
Memorandum Opinion by Justice West**

A jury convicted appellant Francisco Muniz of murder, a first-degree felony (Count 1) and aggravated assault, a second-degree felony (Count 2). TEX. PENAL CODE §§ 19.02(c), 22.02(b). Appellant was sentenced to forty years' imprisonment on Count 1 and twenty years' imprisonment on Count 2; the trial court ordered the sentences to run

concurrently. By two issues, appellant argues his convictions should be reversed because: (1) the trial court wrongfully denied him appointment of a testifying expert witness under *Ake v. Oklahoma*, 470 U.S. 68, 86 (1985), and (2) the State's investigation was so deficient that his due process rights were violated under *Arizona v. Youngblood*, 488 U.S. 51, 59 (1988). We affirm.

## I.    BACKGROUND

Appellant lived next door to Juan Perez. A six-foot fence with horizontal slats spaced by two and a half inch gaps separated their houses. Appellant had problems with Perez because Perez smoked marijuana, and appellant thought Perez could be engaged in other illegal activity. On the night at issue, appellant fired three shots toward Perez and Perez's stepson, Fabian Lopez. Perez died as a result.

Lopez testified that appellant frequently sat in his front yard, drinking and shooting firearms into the air. According to Lopez, appellant was sitting in his front yard drinking on the night of the shooting. Lopez testified that he and Perez exited the Perez house to smoke marijuana. Lopez further testified that appellant said something confrontational to them in Spanish, but he could not fully make out what appellant said. Perez then laughed, giggled, and said, "What the [expletive] is wrong with this dude?" Lopez testified that appellant was angered by Perez's laugh, approached the fence, and fired shots in their direction. He testified that appellant is a tall man and reached over the fence to shoot. He further testified that appellant shot once, paused briefly and then fired more shots. Lopez also testified that he and Perez were unarmed and did not threaten appellant.

After the shooting, appellant went into his house and discarded his firearm between a gap in his home's staircase such that it fell behind stored personal items

2

underneath the stairs. Appellant testified that he discarded it under the stairs to prevent scaring his wife by approaching her with a gun. Then, he went upstairs and told his wife that he was sorry and "I [expletive]ed up. I [expletive]ed up." When she asked what happened, appellant responded that he shot Perez after Perez came at him with a machete. When police arrived at the scene, appellant similarly told them he messed up by shooting at Perez and that Perez came at him with a machete.

Afterward, appellant was interviewed at the police station. Appellant stated several times that he "messed up" and that the shooting should not have happened. He stated that he saw Perez move his hands to his waist and thought Perez was grabbing for a weapon. Appellant was asked several times if he actually saw a weapon, and each time he responded that he just saw Perez do the reaching motion.

At trial, appellant testified that Perez did not come at him with a machete but that he had seen Perez carry a knife around sometimes. He further testified he thought Perez had a gun, although he never actually saw one. No guns or machetes were recovered from Perez's person or residence. After the jury's conviction, this appeal ensued.

## II.    *AKE* EXPERT

In his first issue, appellant asserts he was entitled to an expert who could speak to the "the reasonableness of his belief that deadly force was immediately necessary to protect himself." More specifically, he explains that a ballistics expert could have "determine[d] the trajectory of shots, the distance between parties, the positions of the parties during the shooting, and whether the shots were fired with intent or recklessly."

An *Ake* claim is a request by an indigent criminal defendant for state-funded expert assistance. *See Ake v. Oklahoma*, 470 U.S. 68, 83 (1985). *Ake* claims are not preserved

3

by informal requests. *Ex parte Jimenez*, 364 S.W.3d 866, 882 (Tex. Crim. App. 2012). Rather, preservation of such claims requires: (1) a written motion, and (2) a formal ruling from the trial court. *Id.* Here, the only written motion in the clerk's record is appellant's September 6, 2024 motion requesting permission to conduct a ballistics test on the firearm collected by police. At the hearing on that motion, appellant's trial counsel asserted appellant was not seeking a testifying expert but merely the ability to test the firearm at issue at a shooting range. The trial court granted that request. While the parties discussed ballistics expert testimony at various status hearings preceding September 6, 2024, the record does not contain a written motion or ruling from the trial court related to a request for a testifying expert. Thus, appellant failed to preserve his *Ake* claim. *See id.*

Even assuming the issue was preserved, a motion for an expert under *Ake* requires that a claimant articulate his defensive theory and present affidavits or other evidence supporting his need for expert assistance. *Id.*; *Diez v. State*, 693 S.W.3d 899, 921 (Tex. App.—Austin 2024, pet. ref'd), *cert. denied*, No. 25-5969, 2026 WL 79736, __ U.S. __, __ (2026). We find no affidavits or other evidence in the record supporting the need for a testifying expert.

We overrule appellant's first issue.

### III. *YOUNGBLOOD* DUE PROCESS

In his second issue, appellant asserts that the police investigation was so deficient that his due process rights were violated under *Youngblood* because police did not create a crime scene sketch and failed to collect or did not test DNA, fingerprint, and ballistics evidence. 488 U.S. at 52.

4

*Youngblood* directs our analysis of due process claims when the state fails to properly collect, preserve, or test potentially exculpatory evidence. *Id.* at 58. Potentially exculpatory evidence is "evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Id.* To establish a due process violation, the appellant must prove the evidence was uncollected or untested because of bad faith. *Id.* at 57; *State v. Villarreal*, 692 S.W.3d 844, 850 (Tex. App.—Corpus Christi–Edinburg 2024, pet. ref'd). "[B]ad faith entails some sort of improper motive, such as personal animus against the defendant or a desire to prevent the defendant from obtaining evidence that might be useful." *Ex parte Napper*, 322 S.W.3d 202, 238 (Tex. Crim. App. 2010). Even crime scene sloppiness does not, on its own, equate to bad faith. *See Brecheen v. State*, 372 S.W.3d 706, 711 (Tex. App.—Eastland 2012, pet. ref'd) (holding there was no bad faith even where officers admitted they made mistakes by failing to secure the scene, allowing non-officers to enter the scene, one officer washing his hands in the sink at the scene, and failing to seize an air rifle present at the scene); *Sossamon v. State*, No. 10-02-00231-CR, 2004 WL 2610434, at *6 (Tex. App.—Waco Nov. 17, 2004, pet. ref'd) (mem. op., not designated for publication). In *Youngblood*, the United States Supreme Court held that the State's failure to (1) preserve all collected semen stains and (2) conduct all possible laboratory tests on semen samples could at most be characterized as negligent, falling below the bad faith standard. 488 U.S. at 58. The Court further noted that no evidence was concealed from the defendant, but rather the evidence was available to the defendant if he wanted to conduct independent testing. *Id.* The Court rationalized that the State's ability to prosecute does not hinge on compliance with "an undifferentiated and absolute

duty to retain and to preserve all material that *might* be of conceivable evidentiary significance in a particular prosecution." *Id.* (emphasis added).

Here, appellant failed to prove bad faith by showing an improper motive or personal animus toward him by law enforcement. *See Ex parte Napper*, 322 S.W.3d at 238. Further, no evidence was concealed from appellant, and appellant was not denied the ability to independently test any of the complained-of evidence. *See Youngblood*, 488 U.S. at 58. The State has no constitutional or statutory duty to gather, preserve, or test *all potential* evidence. *See id.* Investigation of a criminal defendant's defensive theories is a duty of defense counsel, not the State.[1] *Ex parte Welborn*, 785 S.W.2d 391, 395 (Tex. Crim. App. 1990) (holding defense "counsel is charged with making an *independent investigation* of the facts of the case, eschewing wholesale reliance in the veracity of his client's version of the facts"); *Menefee v. State*, 211 S.W.3d 893, 904 (Tex. App.—Texarkana 2006, pet. ref'd) (providing "[t]he State has no duty to seek out exculpatory information independently on the defendant's behalf"); *see also Mitchell v. State*, No. 01-23-00251-CR, 2024 WL 187385, at *5 (Tex. App.—Houston [1st Dist.] Jan. 18, 2024, no pet.) (mem. op., not designated for publication) (explaining "a prosecutor does not have an independent duty to investigate a defendant's version of events"). Accordingly, our discovery statute is intended to assist defense counsel's ability to conduct her own independent investigation. *See* TEX. CODE CRIM. PROC. art. 39.14. The defense's failure to test potential evidence related to its case-in-chief cannot be faulted to the State. *See Youngblood,* 488 U.S. at 58; *Menefee*, 211 S.W.3d at 904. Likewise, the State is not required to create evidence. *In re State*, 659 S.W.3d 1, 14 (Tex. App.—El Paso 2020,

---

[1] We note that appellant did not assert an ineffective assistance of counsel issue.

6

orig. proceeding); *Coleman v. State*, 577 S.W.3d 623, 634 (Tex. App.—Fort Worth 2019, no pet.). And appellant presents no argument that the State did anything to prevent him from creating a crime scene sketch, if he felt one was necessary. *See Youngblood*, 488 U.S. at 58.

Moreover, appellant has failed to explain how his complaints about the investigation, if cured, "might exonerate him." *See id.* at 57–58; *Sossamon*, 2004 WL 2610434, at *6 (explaining that uncollected or untested evidence that does not potentially exculpate the appellant is unprejudicial). Appellant admitted to being the shooter. Accordingly, DNA, fingerprint analysis, and crime scene integrity was unnecessary to link appellant to the firearm.

Thus, we hold that appellant failed to show both (1) bad faith and (2) any untested or uncollected evidence was potentially exonerating. *See Youngblood*, 488 U.S. at 57. We overrule appellant's second issue.[2]

### IV. CONCLUSION

We affirm the trial court's judgment.

JON WEST
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
7th day of May, 2026.

---

[2] Appellant also complained that the crime scene was unsecure because a family member he was unfriendly with found shell casings away from the scene of the shooting at a nearby house. Appellant additionally complained that an officer who responded to the scene later resigned for running his ex-girlfriend's license plate number. Appellant provides no explanation as to how these complaints equate to police's bad faith regarding alleged lack of collecting or testing potentially exculpatory evidence in this case.

7