**Affirmed and Memorandum Opinion filed August 25, 2015.**



**In The**

# Fourteenth Court of Appeals

### NO. 14-14-00371-CR

**CHRISTOPHER JAMES STOERNELL, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 262nd District Court
Harris County, Texas
Trial Court Cause No. 1397932**

## M E M O R A N D U M   O P I N I O N

Appellant, Christopher James Stoernell, appeals his conviction for felony murder, contending (1) the evidence is insufficient to support the conviction, (2) the trial court abused its discretion by denying appellant's motion to dismiss the indictment based on the delay between the incident and the indictment, and (3) the trial court abused its discretion by admitting certain evidence. We affirm.

## I. Background

On the afternoon of September 30, 1994, a group of teenagers gathered at the home of appellant's mother while she was away. The group included appellant and the complainant, Ruth Majewski, who had a prior dating relationship. The evidence reflects that in the weeks before the incident at issue, appellant was physically and verbally abusive toward Majewski by attempting to push her down stairs and spitting on her face.

One member of the group, Israel Moore, brought a .22 caliber revolver to the gathering, and another brought ammunition. Some of them passed the gun around and played with it, but accounts differ regarding whether Majewski ever handled the gun. Moore testified that Majewski was apprehensive of the situation and expressed unease. Regardless, testimony was consistent that appellant began "dry firing" the gun or pointing the partially loaded gun at others in the living room and pulling the trigger. Appellant also asked if anyone else would like to play "Russian Roulette." Appellant's actions made the others uncomfortable, and he complied with their requests to put the gun down.

Shortly thereafter, either appellant or Majewski prompted the other to go into appellant's bedroom. Appellant brought the gun with him despite the group's pleas that he leave it in the living room. Appellant and Majewski could be heard talking, but their conversation was not discernible. Five to ten minutes later, a gunshot was fired in the bedroom. The members of the group rushed into the bedroom to see what had happened.

Moore testified that upon hearing the gunshot, he ran to the bedroom and saw appellant and Majewski on the bed. The gun was on the bed pointed toward Majewski. Moore recalled that Majewski looked dazed and attempted to walk towards the bedroom door, with her hands in front of her, and she collapsed after a

few steps. Blood began to ooze from the gunshot wound in the center of her chest. Moore further testified that appellant also appeared in a state of shock, and he then began to panic and said something to the effect of "I fucked up" and "What the fuck am I going to do?" Moore did not remember appellant doing anything to help Majewski. Moore further testified that he cooperated with police and led them to another member of the group, Michael Morse, and the police found the gun in Morse's possession because he had removed it from the home after the incident.

Morse's testimony was largely consistent with Moore's testimony. Morse testified that after the gun was fired at Majewski, appellant grabbed his bangs and stated, "I accidentally shot [Majewski]" or "I think I just shot [Majewski]." Morse also recalled that Majewski said nothing and appellant did not try to assist her.

Another member of the group, John Nickerson, testified that immediately following the gunshot, appellant came out of the bedroom "in a daze" and said that "she [Majewski] shot herself." Nickerson also testified Majewski said, "Chris shot me." Nickerson's sworn statement to the police shortly after the shooting made no mention of Majewski or appellant saying anything. Finally, another now-deceased witness, Melissa Messec,[1] told the police that appellant claimed Majewski shot herself, and Messec did not mention any statement by Majewski.

Immediately after the shooting, some members of the group, excluding appellant, attempted to treat Majewski but subsequently diverted their panicked efforts toward hiding the gun. During this period, Messec called 911. Majewski was transported via life flight to a hospital, where she was pronounced dead on arrival. However, there was evidence on Majewski's body of attempts at live-saving efforts.

---

[1] Messec died from injuries sustained in a 2006 car accident.

The police, who arrived at appellant's home, performed a gunshot residue test on both appellant and Majewski. The hands of both appellant and Majewski tested positive for gunshot residue. The medical examiner who performed the autopsy concluded Majewski's death was a homicide, but no charges were filed against appellant at that time.

The case was later reexamined by the cold case unit. Approximately twenty years after Majewski's death, appellant was indicted for felony murder. A jury found him guilty and sentenced him to sixty years' confinement.

## II. SUFFICIENCY OF THE EVIDENCE

In his first issue, appellant contends the evidence is insufficient to support his conviction.

### A.    Standard of Review

When reviewing the sufficiency of the evidence, we view all the evidence in a light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We defer to the "jury's credibility and weight determination because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013) (citing *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010)). Thus, it is within the exclusive province of the jury to reconcile conflicts of testimony and accept or reject such portions thereof as it sees fit. *Elkins v. State*, 822 S.W.2d 780, 783 (Tex. App.—Houston [14 Dist.] 1992, pet. ref'd). Likewise, the jury is free to believe all, part, or none of any witness's testimony. *Id*. Furthermore,

circumstantial evidence is as probative as direct evidence in establishing guilt. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Finally, each fact need not point directly and independently to guilt, as long as the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Id*.

**B.    Analysis**

A person commits felony murder if he "commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual." Tex. Penal Code Ann. § 19.02(b)(3) (West, Westlaw through 2015 R.S.). The State charged that appellant while in the course of committing aggravated assault—threatening Majewski with a deadly weapon, namely a firearm—committed an act clearly dangerous to human life—pointing a firearm at or in the direction of Majewski while pulling the trigger—and thereby caused her death.

The State's theory at trial was that appellant shot Majewski while playing "Russian Roulette." The following evidence supported that theory. Appellant had been "dry firing" the gun and playing "Russian Roulette" with other members of the group immediately before Majewski was shot. Appellant admitted immediately after the shooting: "I fucked up" or "What the fuck am I going to do?"; and "I accidentally shot [Majewski]" or "I think I just shot [Majewski]." Gunshot residue was found on appellant's hands. He had a past history of being verbally and physically abusive to Majewski, raising an inference that he had a disregard for her safety and may have had no qualms about playing "Russian Roulette" with her. Appellant had refused the pleas from groupmembers to stop playing with the gun and not take it in the bedroom.

5

Additionally, although not a part of his statement to police, Nickerson[2] testified that after hearing the gunshot and entering the bedroom, Majewski said, "Chris shot me." Further, while there was evidence that appellant also stated immediately after the incident that Majewski shot herself, the jury was free to believe the evidence regarding appellant's and Majewski's contrary statements.

The jury was also free to infer guilt from appellant's actions following the shooting where he seemed unconcerned with the fact Majewski had been shot and was more concerned with what would happen to him. Further, although appellant did not attempt to hide the gun, he did not preclude Morse from taking the gun or otherwise insist it be given to the police. Additionally, appellant did not join others in the group who attempted to assist Majewski after the shooting. *See Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995) (finding that intent can be inferred from the acts, words, and conduct of the accused); *see also Moralez v. State*, 450 S.W.3d 553, 568 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (finding that jury was entitled to infer appellant's intent to kill from all his conduct, including his attempt to hide evidence of death); *Sustaita v. State*, No. 14-09-00060-CR, 2010 WL 3418247, at *4 (Tex. App.—Houston [14th Dist.] Aug. 31, 2010, pet. ref'd) (mem. op.) (holding that defendant's flight from scene of purported suicide, statement "I didn't do it," and hiding the gun is consistent with a finding of guilt).

The record also reflects that appellant has altered his version of the incident at least five times since the day of the incident demonstrating a consciousness of guilt. Specifically, the day following the shooting, appellant told Majewski's

---

[2]  It appeared to counsel for the State and appellant that Nickerson was having some mental or physical issues remembering events while testifying at trial. They agreed to admit his statement and restrict questions to Nickerson's written statement, rather than continuing to question him about the incident.

mother that, after he refused Majewski's sexual advances, she became distraught, put the gun to her chest, and pulled the trigger. Appellant told his stepfather several years after the shooting that Majewski took the gun from appellant's closet, put the gun against her chest, and before pulling the trigger declared, "This is how much I love you." Many years later, appellant told the mother of his child that Majewski became distraught after he told her that he wanted to date someone else. According to this version, the gun was underneath a pillow that Majewski was hugging, and she pulled it out and declared before shooting herself, "You made me do this." Sometime later, appellant told this same person that he attempted to grab the gun from Majewski and he inadvertently put his finger on the trigger which caused it to fire. Finally, as the case was being reexamined, appellant gave a voluntary statement to a Michigan State Trooper. In this statement, appellant's version changed once more, as he demonstrated two distinctly different ways that Majewski shot herself, neither of which involved the gun pressed to her chest. *See Couchman v. State*, 3 S.W.3d 155, 164 (Tex. App.—Fort Worth 1999, pet. ref'd) (holding appellant's changing story constituted evidence of his consciousness of guilt and gave jury reason to believe he had something to hide); *see also Hernandez v. State,* 127 S.W.3d 206, 214 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (concluding appellant's changing story gave the jury cause to disbelieve his testimony).

Further, the record does not support appellant's contention that Majewski committed suicide. Majewski's mother and Majewski's friend, Wendy Hereford, testified that Majewski had an exceedingly positive outlook on life and was very excited about her plans that evening. Hereford testified that she nicknamed Majewski "sunshine" because of her radiant warmth and unshakeable optimism. According to Hereford and another friend of Majewski, Paula Abduwallah, that

optimism remained even in the face of appellant's cruel treatment. Hereford further testified that Majewski was excited to see appellant on the day she died because she believed that he wanted to apologize and reunite with her. *See Porter v. State*, 215 S.W. 201, 204 (Tex. Crim. App. 1918) (concluding evidence that decedent was in good humor tended to disprove accused's contention that decedent committed suicide); *see also Horinek v. State*, 977 S.W.2d 696, 701 (Tex. App.— Fort Worth 1998, pet. ref'd) (holding evidence that decedent had optimistic outlook on life and plans for the future and was not anxious or ill tended to disprove accused's contention that she committed suicide); *Weems v. State*, No. 14-10-00953-CR, 2011 WL 6579121, at *6 (Tex. App.—Houston [14th Dist.] Dec. 20, 2011, pet. ref'd) (mem. op.) (not designated for publication) (concluding evidence that the victim was in good spirits shortly before death tended to disprove contention that victim committed suicide).

Additionally, forensic evidence negated that Majewski shot herself in the chest. State's expert, R.K. Lyon, a forensic chemist and firearms expert, testified that, had the wound been a contact wound as appellant initially claimed, the clothing Majewski was wearing would have been charred and the polyester material would have been partially melted. Further, medical examiner, Dewayne Wolf, testified that, had Majewski shot herself as appellant described, a muzzle imprint would have been visible on her skin. Additionally, Dr. Wolf testified that the autopsy records did not show any evidence of stippling (pinpoint abrasions surrounding the bullet hole) or soot on Majewski's gunshot wound, which would have been present with an intermediate or close-range shot. Finally, appellant's forensic expert, Richard Ernest, who conducts firearms examinations, acknowledged that Majewski's wound was not a contact wound.

8

Moreover, an in-court demonstration showed that an average 5′3″ woman, such as Majewski, could only extend the gun 10.5 inches away from her chest. Dr. Tommy Brown, the forensic pathologist who performed Majewski's autopsy, opined that the muzzle of the gun was 20-24 inches away from Majewski's chest when the fatal shot was fired. The State's expert, R.K. Lyon, performed tests and concluded that the gun was fired from 2-3 feet away from Majewski's chest. Appellant's expert, Richard Ernest, made an initial report estimating the range at 1-2 feet. However, at trial, Ernest revised his estimate and opined that the range could have been three to six inches less than previously reported, making his range anywhere from 6 inches to 2 feet. Thus, the jury was free to believe the State's experts and the initial report of appellant's expert indicating the gun was fired from a distance that was beyond Majewski's reach. *See Winfrey*, 393 S.W.3d at 768.

Appellant also relies on the fact that Majewski had gunshot residue on her hands. However, according to the crime scene investigator for the Harris County Sheriff's Office, Jerry Ferrell, that evidence is inconclusive because it merely means that her hands were in close proximity to the gun when it fired.

Finally, appellant claims that he could not have shot Majewski because when Moore rushed into the room, he saw appellant sitting close by Majewski's side. Appellant contends that a shot fired from that close range would have left a very different forensic marking on Majewski's body. However, Moore did not witness the shooting or its immediate aftermath. Moore testified that after hearing the gunshot, he hesitated before rushing toward the bedroom because he did not know the source of the gunshot. It is a reasonable inference that during this interval, appellant moved closer to Majewski than the distance from which the shot was fired.

In summary, the jury was free to believe the evidence indicating that appellant shot Majewski and reject appellant's theory that Majewski committed suicide. Having reviewed the evidence in a light most favorable to the verdict, we conclude a rational fact finder could have found beyond a reasonable doubt that appellant committed felony murder. *See Jackson*, 443 U.S. at 319; *Gear*, 340 S.W.3d at 746. Accordingly, we overrule appellant's first issue.

### III PRE-INDICTMENT DELAY

In his second and third issues, appellant contends that the trial court abused its discretion by denying appellant's motion to set aside the indictment. Specifically, appellant argues that the nineteen-year delay between the shooting and his indictment violated his Fifth Amendment right to due process and his right to due course of law under the Texas Constitution. *See* U.S. CONST. amend V, XIV; Tex. Const. art. I §10. The Texas due-course-of-law clause generally "does not provide any greater protection than the federal due process clause." *State v. Vasquez*, 230 S.W.3d 744, 750 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Thus, we evaluate appellant's second and third issues under federal law. *See Mann v. State*, 122 S.W.3d 171, 192, n. 97 (Tex. Crim. App. 2003).

#### A. Standard of Review and Applicable Law

Statutes of limitations are primarily intended to protect citizens from "stale criminal charges that impair those citizens' abilities to defend themselves." *State v. Krizan-Wilson*, 354 S.W.3d 808, 813–814 (Tex. Crim. App. 2011) (citing *United States v. Marion,* 404 U.S. 307, 322–24, (1971)). Yet, there is no statute of limitations under Texas law for a prosecution for murder. *See* Tex. Code Crim. Proc. Ann. art. 12.01(1)(A) (West, Westlaw through 2015 R.S.). However, the Due Process Clause plays a limited role in protecting against oppressive delay. *See United States v. Lovasco*, 431 U.S. 783, 789 (1977); *see also Ibarra v. State*, 11

S.W.3d 189, 193 (Tex. Crim. App. 1999). A defendant seeking dismissal of an indictment for delay must satisfy a two-prong test by demonstrating (1) his right to a fair trial was substantially prejudiced by the delay, and (2) such delay was intentional and used to gain a tactical advantage over the defendant. *See Marion*, 404 U.S. at 322; *Krizan-Wilson*, 354 S.W.3d at 817; *Ibarra*, 11 S.W.3d at 193. Failure by the defendant to prove that the delay was intentionally undertaken by the government for the purpose of gaining a tactical advantage over the accused or some other impermissible bad faith purpose ensures the indictment's survival. *See United States v. Crouch*, 84 F.3d 1497, 1514 (5th Cir. 1996).

In reviewing a trial court's ruling on a defendant's motion to set aside, we apply a bifurcated standard. *Krizan-Wilson*, 354 S.W.3d at 815. We give almost total deference to the trial court's findings of fact, as well as mixed questions of law and fact that rely upon the credibility of a witness. *Id*. We review *de novo* pure questions of law and mixed questions that do not depend on credibility determinations. *Id*.

## B.    Analysis

At the hearing on the motion to set aside the indictment, appellant argued that the State's delay in bringing charges constituted bad faith. Appellant also asserted that the State's failure to initially prosecute the case and the resulting delay between the filing of charges, which allegedly rendered two potentially helpful witnesses unavailable, constituted bad faith. However, appellant presented no evidence to suggest that the State intentionally delayed bringing charges to gain a tactical advantage.

The lead police investigator, Sergeant Brown, testified that he was overwhelmed with investigating other homicides at the time and did not conduct a proper and complete investigation of this case. Sergeant Brown did not thoroughly

11

interview Majewski's mother or review the autopsy report that ruled the death a homicide. At that time, Sergeant Brown believed Majewski committed suicide. The case was not prosecuted for lack of evidence, and Brown testified that he would have brought charges in 1994 had he possessed at that time the information he now possesses.

A defective homicide investigation does not constitute bad faith on the part of the State. *See id.* at 817 (holding that there was no bad faith where prosecutors did not initially bring charges because they labored under a faulty theory of law); *see also Brecheen v. State*, 372 S.W.3d 706, 711 (Tex. App.—Eastland 2012, pet. ref'd) (concluding failure by police to properly preserve crime scene did not deny appellant his right to due process). The State is not required to continuously investigate a case or bring charges immediately if it believes it does not have sufficient evidence. *Krizan-Wilson*, 354 S.W.3d at 818–19.

Appellant was required to present proof of an "improper purpose" for the delay. *See id*. We conclude appellant did not satisfy the bad faith element of the two-prong test. *See id.* at 817 (citing *Spence v. State*, 795 S.W.2d 743, 750 (Tex. Crim. App. 1990)).

Additionally, appellant failed to satisfy the substantial-prejudice element. Appellant contends that Messec's and Nickerson's testimony was critical to his defense because their testimony rebutted testimony that Majewski did not want to play with the gun, appellant admitted shooting Majewski, appellant appeared unconcerned, and Majewski said "[Chris] shot me." The investigating detective located and interviewed other witnesses. Many testified about Majewski's demeanor and the events of that day, including Moore, Morse, and Majewski's mother. The assistant medical examiner also testified and supported that the death was not a suicide. Messec's statement was available and contained information

beneficial to both the State and appellant. Nickerson also testified, and his statement was in evidence.

We conclude appellant has not established how the testimony, which he alleges was unavailable due to delay in the indictment, was material to the outcome of the trial. The "real possibility of prejudice inherent in any extended delay: that memories will dim, witnesses become inaccessible, and evidence be lost, is not, in itself, enough to justify the dismissal of an indictment." *Krizan-Wilson*, 354 S.W.3d at 820 (holding that absent proof of an improper purpose, a "23-year pre-indictment delay does not offend due process.") Thus, appellant has not demonstrated the substantial-prejudice prong, which a defendant must satisfy when seeking to set aside an indictment for delay. *See id*. We overrule appellant's second and third issues.

## IV. ADMISSION OF EVIDENCE

In his fourth and fifth issues, appellant argues that the trial court erred in admitting two photographs of Majewski's partially naked corpse. Appellant argues that these photographs were highly prejudicial to his case and had little probative value to justify their inclusion.

## A. Standard of Review

Relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by consideration of undue delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403. We review a trial court's ruling on the admissibility of photographs for abuse of discretion and uphold the ruling if it is within the zone of reasonable disagreement. *Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002).

13

In weighing the probative value of photographic evidence against its potential for unfair prejudice, the trial court should consider factors, including but not limited to, "the photos' 'gruesomeness, their detail, their size [i.e., whether they have been enlarged], whether they are black and white or color, whether they are close-up, [and] whether the body is naked or clothed.'" *Narvaiz v. State*, 840 S.W.2d 415, 429 (Tex. Crim. App. 1992) (quoting *Long v. State*, 823 S.W.2d 259, 272 (Tex. Crim. App. 1991)). A trial court does not err simply because it admits evidence of gruesome photographs. *Sonnier v. State*, 913 S.W.2d 511, 519 (Tex. Crim. App. 1995). When the gruesome quality of those photos is a direct result of the defendant's actions, the trial court does not abuse its discretion merely because it admits said evidence. *Id*. The same also holds true if the photographs add to the jury's understanding of the nature of the wounds involved. *Matamoros v. State*, 901 S.W.2d 470, 476 (Tex. Crim. App. 1995) (photography clearly detailing victim's wounds before autopsy admissible partly because they "add to the jury's understanding of the nature of the wounds involved"). Likewise, photographs taken from different vantage points also add to the jury's understanding of the victim's injuries. *Id*. Finally, photographs depicting a patient or victim being treated by medical equipment are also admissible. *See McFarland v. State*, 845 S.W.2d 824, 841 (Tex. Crim. App. 1992), *overruled on other grounds by*, *Bingham v. State*, 915 S.W.2d 9 (Tex. Crim. App. 1994).

## B.    Analysis

At trial, counsel for appellant objected generally to the duplicative nature of seven photos that depicted Majewski's nude body after attempts had been made to save her life. The State argued that the photographs tended to disprove appellant's suicide theory and were thus probative because they showed a lack of stippling around the wound, inconsistent with a close gunshot, and indicated that

Majewski's arms were not long enough to shoot herself as appellant claimed. The trial court sustained appellant's objection to one exhibit but admitted the other six exhibits finding the photographs more probative than prejudicial. Appellant appeals the admission of only two photos, State's Exhibits 21 and 23, contending that their probative value is significantly outweighed by their prejudicial impact.

Exhibit 21 portrays Majewski's face, upper chest, and a bullet hole in the center of her chest. A medical device hangs from the side of her mouth, and her left nipple is visible. Appellant's primary contention is that the photo is duplicative of Exhibit 26, which offers a closer and clearer view of the wound. However, it is not duplicative because it presents a distinctly different view of Majewski's wound. In fact, the lighting in Exhibit 26 is brighter than that found in Exhibit 21, and Exhibit 21 also presents the jury with a different perspective with which to judge the level of stippling surrounding the wound. *See Matamoros*, 901 S.W.2d at 476. Additionally, although the picture could be considered disturbing, any gruesome aspects are a result of appellant's actions; that is, the bullet hole and the medical device used for treatment because of that wound. *See Sonnier*, 913 S.W.2d at 519. Because such forensic evidence was of paramount importance, the trial court did not abuse its discretion by finding that the probative value of this photograph was not substantially outweighed by the danger of unfair prejudice. Thus, we overrule appellant's fourth issue.

Exhibit 23 is a more graphic depiction of Majewski's naked body from the lower torso to the top of her head. Blood can be seen near her lower torso and right arm, sutures below her breasts are clearly visible, and the same medical device shown in Exhibit 21 is in her mouth. The photograph was probative because it partly displays the length of Majewski's arms and was relevant to rebut appellant's theory that Majewski shot herself. This exhibit's most graphic feature

are the sutures running across Majewski's chest used to close an incision made by hospital personnel attempting to save Majewski's life. The trial court did not abuse its discretion by determining that a photo showing sutures related to life-saving measures ultimately resulting from appellant's actions, which would necessarily be present in a photo of Majewski's chest, did not render the probative value of the photo outweighed by the danger of unfair prejudice. *See Sonnier*, 913 S.W.2d at 519; *McFarland*, 845 S.W.2d at 841. We overrule appellant's fifth issue.

We affirm the trial court's judgment.


/s/     John Donovan
        Justice



Panel consists of Justices Boyce, McCally, and Donovan.
Do Not Publish — Tex. R. App. P. 47.2(b).

16