No. PD-0994-15

IN THE
COURT OF CRIMINAL APPEALS
OF TEXAS

ORIGINAL

CURTIS ALLEN GARRISON

APELLANT

VS.

THE STATE OF TEXAS

PETITION IN CAUSE NO. B-1301.37-R
FROM THE 163rd DISTRICT COURT OF ORANGE COUNTY, TEXAS
AND APPEAL NO. 13-14-00372-CR
FROM THE COURT OF APPEALS FOR THE
THIRTEENTH SUPREME JUDICIAL DISTRICT.

PETITION FOR DESCRETIONARY REVIEW

**FILED IN**
**COURT OF CRIMINAL APPEALS**

OCT 01 2015

Abel Acosta, Clerk

CURTIS ALLEN GARRISON
#1926573
FRENCH ROBERTSON UNIT
12071 FM 3522
Abilene, TX 79601

PRO SE

RECEIVED IN
COURT OF CRIMINAL APPEALS

OCT 01 2015

Abel Acosta, Clerk

ORAL ARGUMENT REQUESTED

i

## IDENTITY OF PARTIES

### PURSUANT TO TEX.R.APP. P38.1(a),
### THE PARTIES TO THIS SUIT ARE AS FOLLOWS

1. Krispen Walker, attorney for the state of Texas
   Orange county attorney office
   801 Division Ave
   Orange, TX 77630

2. Christine R. Brown-Zeto, attorney for appellant on direct appeal
   1107 Green Avenue
   Orange, TX 77630

3. Curtis Allen Garrison, apellant
   # 1926573
   French Robertson Unit
   12071 FM 3522
   Abilene, TX 79601

4. Jim Sharon Bearden Sr., attorney for appellant at trial
   116 S. Border St.
   Orange, TX 77630

5. Jim Sharon Bearden Jr., attorney for appellant at trial
   116 S. Border St.
Orange, TX 77630

ii

## TABLE OF CONTENTS

IDENTITY OF PARTIES . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . .iii

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . iv

STATEMENT REGUARDING ORAL ARGUMENT . . . . . . . . . . . . .1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF PROCEDURAL HISTORY . . . . . . . . . . . . . . 2

GROUND FOR REVIEW . . . . . . . . . . . . . . . . . . . . ..2

## GROUND FOR REVIEW
### THE COURT OF APPEALS ERRORED IN HOLDING THE EVIDENCE WAS SUFFICIENT TO SUPPORT CONVICTION THAT APPELLANT DID NOT ACT IN SELFE-DEFENSE.

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . 3-4

PRAYER FOR RELIEF . . . . . . . . . . . . . . . . . . . 5

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . 5

APPENDIX . . . . . . . . . . . . . . . . . . . . . . . 6

# INDEX OF AUTHORITIES

---

## CASES

---

[

Butler V. State 769 S.W. 2d 234, 238 ( Tex crim App. 1989 ) . . 4
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Geesa V. State 820 S.W. 2d 154 ( Tex crim App. 1991 ) . . . . 3
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Hooper V. State 214 S.W. 3d 9 ( Tex crim App. 2007 ). . . . 4
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Jackson V. Virginia 443 U.S. 307 ( 1979 ) . . . . . . . . . . 3
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## STATUTES

---

Tex. penal code Ann sec. 19.03 (a)(7)(A). . . . . . . . . . . 1

Tex. penal code Ann sec. 9.32 . . . . . . . . . . . . . . . 1

TO THE COURT OF CRIMINAL APPEALS OF TEXAS


Curtis Allen Garrison petitions this honorable court to review
the judgement affirming his conviction for capitol murder in
cause no. B-130137-R


## STATEMENT REGUARDING ORAL ARGUMENT


The appellant Curtis Allen Garrison, requests oral argument
before the court of criminal appeals of Texas, because oral argument
will assist the court in determining weather the court of appeals
errored when it determined the evidence was sufficient to support
his conviction that appellant did not act in selfe-defense.


## STATEMENT OF CASE


The appellant, Curtis allen Garrison, was charged by indictment
of  capitol murder under Tex. pen. code. Ann. sec. 19.03 (a)(7)(A)
on Feburary 27, 2013. The state did not seek the death penalty on
May 19, 2014, a jury was selected and sworn and testimony began in
trial . Appellants sole defense was that he acted in selfe-defense
pursuant to Tex pen. code Ann. sec. 9.32. On May 23, 2014, the jury
rejected appellants claim of selfe-defense and found him guilty of
capitol murder as charged in the indictment. Upon conviction of
capitol murder, punishment of confinement for life without parole
was mandatory and the court began this sentence on May 23, 2014.

## STATEMENT OF PROCEDURAL HISTORY

A three- justice panel of the court of appeals rendered its opinion on July 16, 2015. Garrison V. State no. 13-14-00372-CR ( Tex App. Corpus Christy July 16, 2015 Pet filed ) ( mem op., not designated for publication ) Appellant timely filed a motion for an extension of time to file a petition for discretionary review which the court of criminal appeals extended to October 9, 2015. Appellant timely filed this petition before this deadline by sending it to his prison units mail room to be forwarded to the clerk of the court of criminal appealls pursuant to the mail box rule.

## GROUND FOR REVIEW

The court of appeals erred in holding the evidence was sufficient to support his conviction that appellant did not act in selfe-defense.

## ARGUMENT

REASON FOR GRANTING REVIEW:

The court of appealls concluded in its opinion that the evidence was legally sufficient to uphold his conviction. This finding did not consider that since he was charged with capitol murder due to killing two people in the same criminal transaction evidence that he did not act in selfe-defense for BOTH murders had to be supported by the record. Specificy the court of appeals failed to properly review that the evidence in support that he did not act in selfe-defense in the murder of the individual Summer Conn was not supported by the record. By the court of appeals generally reviewing appellants selfe-defense claim and not reviewing it in terms of each particular murder. The court of appeals has thus decided an important question of state or federal law in a way that conflicts with an applicable decission of the court of criminal appeals. Tex R. App. P. 66.3(c).

2

## THE COURT OF APPEALS HOLDING

The court of appeals held in its opinion that " A RATIONAL
JURY COULD HAVE REJECTED APELLANTS SELFE-DEFENSE CLAIM" and found
beyond a reasonable doubt that appellant intentionally and knowingly
caused the deaths of Arron Conn and Summer Conn during the same
criminal transaction Tex penal code Ann. 19.03 (a)(7)(A). In the
majority of its opinion it held that since appellant took flight
fleeing from the scene because of the " FEAR " that others were out
to get him, and that appellant had shot Arron Conn on the ground
even though he still had knife in hand. A jury could have found
these circumstances that he did not act reasonably in selfe-defense.

What it did not consider is if appellant acted reasonably in
using selfe-defense specifically for the murder of Summer Conn.
The standard for reviewing the legal sufficiency of the evidence
is set out in Jackson V. Virginia 443 U.S. 307 ( 1979 ). In that
opinion, the court held the reviewing court is required to determine
whether, after viewing the evidence in the light most favorable to
the prosecution, any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Geesa
V. state  820 S.W. 2d 154 ( Tex crim App. 1941 ) and  Butler V.
State 769 S.W. 2d 234 ( Tex crim App. 1989 ).

A jury cannot convict someone on mere speculation alone.
Hooper V. State 214 S.W. 3d 9 ( Tex crim App. 2009 ) the evidence
that he did not act in selfe-defense of the murder of Summer Conn
is only mere speculation appellant affirmatively believed Summer
Conn was going to try and kill him by her words and suspicious
actions of possibly getting a weapon from her vehicle. The court
of appeals based its rejection of appellants sufficiency claims
in terms of selfe-defense on a majority of his actions twards
Arron Conn. Because it did not consider the selfe-defense sufficiency
issue for both murders as charged for the offense of capitol murder
it did not properly follow the Jackson V. Virginia 443 U.S. 307 (1979)
standard in concluding if a jury was allowed to draw multiple
reasonable infrences as long as each infrence is supported by the
evidence presented at trial. The Jackson V. Virginia ID standard
should be addressed for both murders  in terms of selfe-defense

3

and appellant asserts that this cause should be remanded back to the court of appeals for further proceedings.

PRAYER FOR RELIEF

For the reasons herein allegedly the court of appeals erred
in overruling appellants sole error in appeal 13-14-00372-CR.
Therefor appellant prays this honorable court grant this petition
order briefing, and upon reviewing the judgement entered below,
reverse the judgement of the court of appeals and remand this
case to the court of appeals for review consistant with this
courts holding.

RESPECTFULLY SUBMITTED

Curtis Garrison, appellant
# 1926573
French Robertson Unit
12071 FM 3522
Abilene, TX 79601

PRO SE

5

## CIRTIFICATE OF SERVICE

I HEARBY CERTIFY that pursuant to rule 9.5 and 68.11 of the Texas Rules of Appellant Procedure, a true and correct copy of the above and furegoing petition for discretionary review has been sent by first class U.S. mail to the state prosecuting attorney P.O. Box 13046, Austin, TX 78711 and to Krispen Walker, District Attorney of Orange county, 801 Division Orange, TX 77630.

RESPECTFULLY SUBMITTED:

_Curtis Garrison_

Curtis Allen Garrison, appellant
#1926573
French Robertson Unit
12071 FM 3522
Abilene, TX 79601

5

<u>APPENDIX</u>

Opinion of the court of appeals for the 13th court of appeals district of Texas, Curtis Allen Garrison V. State 13-14-00372-CR ( Tex App. - Corpus Christi July 16, 2015 Pet. filed)
( MEM.OP., not designated for publication )

**CHIEF JUSTICE**
ROGELIO VALDEZ

**JUSTICES**
NELDA V. RODRIGUEZ
DORI CONTRERAS GARZA
GINA M. BENAVIDES
GREGORY T. PERKES
NORA L. LONGORIA

**CLERK**
CECILE FOY GSANGER



# Court of Appeals
## Thirteenth District of Texas

NUECES COUNTY COURTHOUSE
901 LEOPARD, 10TH FLOOR
CORPUS CHRISTI, TEXAS 78401
361-888-0416 (TEL)
361-888-0794 (FAX)

HIDALGO COUNTY
ADMINISTRATION BLDG.
100 E. CANO, 5TH FLOOR
EDINBURG, TEXAS 78539
956-318-2405 (TEL)
956-318-2403 (FAX)

*www.txcourts.gov/13thcoa*

July 16, 2015

Hon. Christine Brown-Zeto
Attorney at Law
1107 Green Avenue
Orange, TX 77630
* DELIVERED VIA E-MAIL *

Hon. John D. Kimbrough
District Attorney
Orange County Courthouse
801 Division
Orange, TX 77630
* DELIVERED VIA E-MAIL *

Hon. Krispen Walker
Assistant County Attorney
Orange County Courthouse
801 Division
Orange, TX 77630
* DELIVERED VIA E-MAIL *

Re:         Cause No. 13-14-00372-CR
Tr.Ct.No.   B-130,137-R
Style:      Curtis Allen Garrison v. The State of Texas

Enclosed please find the opinion and judgment issued by the Court on this date.

Very truly yours,

Cecile Foy Gsanger, Clerk

CFG:jgp
Enc.
cc:   Hon. Vickie Edgerly (DELIVERED VIA E-MAIL)
      Hon. Olen Underwood (DELIVERED VIA E-MAIL)
      State Prosecuting Attorney (DELIVERED VIA E-MAIL)
      Hon. Dennis Powell (DELIVERED VIA E-MAIL)



# THE THIRTEENTH COURT OF APPEALS

## 13-14-00372-CR

Curtis Allen Garrison
v.
The State of Texas

On Appeal from the
163rd District Court of Orange County, Texas
Trial Cause No. B-130,137-R

## JUDGMENT

THE THIRTEENTH COURT OF APPEALS, having considered this cause on appeal, concludes that the judgment of the trial court should be AFFIRMED. The Court orders the judgment of the trial court AFFIRMED.

We further order this decision certified below for observance.

July 16, 2015



NUMBER 13-14-00372-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

CURTIS ALLEN GARRISON,                                    Appellant,

v.

THE STATE OF TEXAS,                                      Appellee.

**On appeal from the 163rd District Court
of Orange County, Texas.**

## MEMORANDUM OPINION

**Before Justices Rodriguez, Garza and Longoria
Memorandum Opinion by Justice Longoria**

Appellant Curtis Allen Garrison was convicted by a jury of capital murder and sentenced to life imprisonment. *See* TEX. PENAL CODE ANN. § 19.03(a)(7)(A) (West, Westlaw through Chapter 46, 2015 R.S.). By one issue, appellant claims there was insufficient evidence to support his conviction. We affirm.

# I.   BACKGROUND[1]

On November 23, 2012, Aaron Conn and his wife, Summer Conn, drove a maroon Nissan Maxima to appellant's house in Vidor, Texas. Cellular phone records admitted at trial show that the Conns called appellant before arriving at his house. Appellant's neighbor, Deborah Bonin, testified that she saw the Conns' car pass by her house. Shortly afterwards, Bonin heard a series of gunshots in rapid succession, then saw appellant's white van leave the area. Appellant drove to his parents' home, where he admitted to them and to his brother that he killed the Conns. Appellant's mother, Lisa Garrison, and his brother, Nathan Garrison, testified that they met with Detective Lauren Kemp at the Orange Police Department and gave her their statements detailing appellant's confession that he had killed the Conns.

During their meeting, other officers went to appellant's parents' residence to arrest appellant. Upon the officers' arrival, appellant came out of his parents' residence, told the officers he was unarmed, and went with them peacefully to the sheriff's office. The officers who arrested appellant located his van in the wood line behind his parents' home. After police officers detained appellant, other officers entered appellant's property to search for the Conns and anyone else who may have needed medical attention.

At appellant's residence, officers found many different types of spent bullet shell casings. They observed a water hose running in the driveway, and the front window of appellant's trailer home appeared to have bullet holes in it. They also observed wet boxers and a wet sock in one of the bedrooms inside the house, wet clothes on a burn

---

[1] This case is before this Court on transfer from the Ninth Court of Appeals in Beaumont pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through Chapter 46, 2015 R.S.).

2

pile outside, and wet socks in the front yard. Officer Roman Zelgowski testified that he found several different firearms and boxes of ammunition in the kitchen upon entering appellant's home. Outside, Officer Barry Laird saw numerous "junked" cars on the property and noticed a Nissan Maxima among them. Inside the Maxima, Officer Laird saw a female body slumped over the front passenger seat and a male body in the back seat covered by clothes. Both bodies were covered in blood and were identified as Aaron and Summer Conn. Sergeant Chad Hogan testified that he observed grass around Aaron Conn's mouth and underneath his eyes, which he thought indicated that Aaron had been lying face down on the grass. Both were pronounced dead upon Officer Laird's discovery.

Dr. John Wayne performed the autopsies the following morning. Dr. Wayne testified that he removed six bullets from Aaron Conn's body, including two from the top and back of his head. In total, Aaron Conn sustained 13 gunshot wounds. Dr. Wayne explained that any one of those wounds could have been fatal. Dr. Wayne also testified that Summer Conn suffered six gunshot wounds, and he removed two bullets from her body. One bullet was removed from her mid-brain and the other from the cervical area of her spine.

Detectives obtained a search warrant for the interior of appellant's residence and discovered four fully loaded firearms on appellant's pool table—a PW Arms rifle loaded with 7.62 military-type ammunition and with a bayonet attached, a 12-gauge Mossberg shotgun loaded with slugs, a .22 Marlin rifle, and a 9 millimeter Kel-Tec handgun. The detectives also discovered more spent shell casings and spent cartridges from the shotgun shells. Appellant had a monitoring system inside his home to alert him whenever someone passed by different locations close to him, such as on his road or his fence.

Appellant's identification card and cellular phone were also obtained during the search, but no gun was recovered from the Conns or from the Maxima.

## A. Appellant's Testimony

Appellant testified in his own defense. Appellant told the court that he and Aaron had an altercation at appellant's house the night before the murders. The altercation started when appellant fired one of his guns through a window in his house because he heard someone running around his property. According to appellant, that person turned out to be Aaron, who had been staying at appellant's house the past couple of days with appellant's permission. Appellant testified that Aaron and Summer's history of drug use worried him, and he had previously prohibited Aaron from letting Summer stay at his house. Earlier on the same night that appellant fired a gun through his window, he told Aaron that he had burned Aaron's clothes and for him not to return to his house. Appellant claimed that Aaron threatened to kill appellant for burning his clothes, and Summer, who was waiting in the car, yelled at appellant that she would have "The Compound" kill him that night. Appellant referred to the "The Compound" as "bad people in Vidor" who "sell drugs [and] kill people."

Appellant testified that the following day, November 23, 2012, Aaron called him to say he was heading over to appellant's house. Appellant went out to his yard to work on his van and took his four fully loaded guns with him. He kept the 9 millimeter Kel-Tec in his pocket and placed the rest of his guns inside the van. When Aaron arrived with Summer in the Nissan Maxima, appellant's dog walked up to the car and attempted to urinate on one of the tires. Aaron kicked appellant's dog, and appellant yelled to Aaron that he was going to "kick his ass." Aaron responded by saying, "I'll kill you,

4

motherfucker." At this point, appellant testified that he was standing under his carport close to his van, about "two or three car lengths" away from Aaron and Summer, who were standing outside their car. After exchanging these verbal threats, appellant testified that Aaron pulled a knife out of the car. Appellant told Aaron that he "best get in his car and leave before he [got] shot," to which Aaron responded that he would make appellant "eat that gun." As Aaron began to approach him, appellant grabbed his shotgun and fired a warning shot into the air. Appellant testified that Aaron and Summer turned around to get back in their car, and he heard Aaron tell Summer, "Help me kill this motherfucker." Appellant testified that he saw Summer sitting in the passenger's seat of the car and observed her reach into the floorboard and fumble with something in her hands. Appellant testified that he believed Summer may have had a gun, so he "didn't take no chances" and "unloaded everything [he] had on that car."

Appellant testified that he began shooting from the carport "in the general direction" of Aaron and Summer and completely emptied the shotgun, which held eight slugs. He threw the empty shotgun on the ground, pulled the 9 millimeter Kel-Tec out from his pocket, and shot all the 9 millimeter bullets from the carport. After unloading the Kel-Tec, he picked up the PW Arms rifle and began shooting from various points as he moved towards the car. Appellant claimed that he saw Aaron ducking and leaning over the passenger's side of the car as if he were reaching for something. Appellant testified that Summer was sitting in the passenger's seat of the car, and he shot the PW in her direction because he was trying to kill Aaron. He told Aaron to show his hands, even though Aaron had already been shot and Summer appeared to be dead. Aaron did not show appellant his hands, and appellant fired another shot. Appellant testified that he shot the PW at the

5

driver's side door where Aaron appeared to be taking cover, with half of his body inside the car and his legs lying outside the car. Appellant once again asked Aaron to show his hands, then shot Aaron in the leg when he failed to comply with appellant's instruction. Appellant testified that he still felt threatened by Aaron at this point because Aaron kept trying to get up and would not stay down on the ground. Appellant said Aaron "kept trying to get up, so that's when I got my .22 and shot him in the back of the head" while Aaron was lying face down on the ground.

Appellant testified that he then picked his guns up off the ground and reloaded them because he believed that more people were coming after him. After deciding he wanted to go to his parents' house, appellant decided to first move Summer's car because it was parked behind his van and blocked his exit. Appellant moved clothes out of the backseat of the car, pulled Aaron's corpse by his arms and into the backseat of the Maxima, then threw the clothes back on top of Aaron's body. He put a seatbelt around Summer so that her body would not slide towards him when moving the car. Appellant crashed the Maxima into another vehicle on his property because the Maxima's brakes did not work. He then crawled out of the driver's side window and rinsed his body off with the water hose. However, appellant claimed he did not know how the wet boxers or wet socks ended up inside his house, on his driveway, and on the burn pile in his yard.

After arriving at his parents' house, appellant parked his van in the backyard where it would be out of sight in case "an army" came after him, because people around town knew what kind of vehicle he drove. Appellant told his parents he had killed the Conns, but he did not tell his parents or his brother that he shot Aaron and Summer because he was concerned for his safety. Nor did appellant tell them that Aaron had pulled a knife

6

on him and that Summer had threatened to kill him. Appellant's brother testified at trial that when he asked appellant if Aaron had been armed, appellant answered, "Not that I know of." Furthermore, appellant's brother testified that, when questioning appellant on what he planned to do with the bodies, appellant said that he, "Thought about going to a river." A jury found appellant guilty of capital murder, and appellant was automatically sentenced to life imprisonment. *See* TEX. PENAL CODE ANN. § 12.31(b) (West, Westlaw through Chapter 46, 2015 R.S.).

## II. DISCUSSION

Appellant asserts that the evidence is legally insufficient to support a finding beyond a reasonable doubt that he intentionally caused the deaths of Aaron and Summer Conn because he was acting in self-defense.

### A. Standard of Review and the Applicable Law

The standard for reviewing the existence of legally sufficient evidence is whether, after viewing all the evidence in the light most favorable to the jury's verdict, any rational trier of fact could have found all the essential elements of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Every single fact presented does not have to point directly and independently to the defendant's guilt; it is sufficient if the conclusion drawn is reasonable by the cumulative effect of all the incriminating circumstances. *Sorells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011). The standard of review is the same for both direct and circumstantial evidence. *Id.* Furthermore, the jury serves as the exclusive judge of the facts, the credibility of the witnesses, and the weight given to the witnesses' testimony. *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011). The jury may believe all, some, or none of the

7

testimony presented. *Williams v. State*, 226 S.W.3d 611, 615 (Tex. App.—Houston [1st Dist.] 2007, no pet.). In our review, we must uphold the jury's verdict unless it is irrational or it is not supported by more than a mere modicum of evidence. *Gomez v. State*, 234 S.W.3d 696, 702 (Tex. App.—Amarillo 2007, no pet.).

We measure the legal sufficiency of the evidence against the elements of the offense as defined by a hypothetically correct jury charge. *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011). A hypothetically correct jury charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrain the State's theory of criminal responsibility, and adequately describes the particular offense for which the defendant was tried. *Id.* Here, the State was required to prove that appellant murdered Aaron and Summer Conn during the same criminal transaction. *See* TEX. PENAL CODE ANN. § 19.03(a)(7)(A). A person commits murder if he "intentionally or knowingly causes the death of an individual." *See id.* § 19.02(b)(1).

The appellant had the burden of producing some evidence to support his claim of self-defense. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). The State does not have to produce evidence to refute the self-defense claim, but must always prove its case beyond a reasonable doubt. *Id.*; *see Brecheen v. State*, 372 S.W.3d 706, 707–08 (Tex. App.—Eastland 2012, pet. ref'd). A person is justified in using deadly force against another if he reasonably believes the force was immediately necessary to protect himself against the other's use or attempted use of unlawful force. *See* TEX. PENAL CODE ANN. § 9.31 (West, Westlaw through Chapter 46, 2015 R.S.). Texas Penal Code sections 9.31 and 9.32 define when an actor's belief that the force was immediately necessary is

8

presumed to be reasonable. *Id.*, § 9.32 (West, Westlaw through Chapter 46 2015 R.S.). The use of force against another is not justified in response to verbal provocation alone. *Id.* §§ 9.31, 9.32; *see Graves v. State*, 452 S.W.3d 907, 911 (Tex. App.—Texarkana 2014, pet. ref'd.). The issue of self-defense is a fact issue to be determined by the jury, which is free to accept or reject it, as they are with all the evidence. *Harrod v. State*, 203 S.W.3d 622, 627 (Tex. App.—Dallas 2006, no pet.).

## B. Analysis

Appellant argues that the evidence is legally insufficient to support his conviction and prove that he acted in self-defense. He argues that the evidence established that he feared for his life when Aaron and Summer Conn came onto his property and threatened him. Furthermore, he was afraid that Summer was involved with "The Compound" and "The Compound" was going to come after him. This fear was based on the altercation from the previous night and a story Aaron had told appellant about participating in the murder of a man who was put into a wood chipper. Appellant contends that he had a reasonable fear for his life, and pure fear took over when Aaron threatened to kill him. Thus, he was justified in killing Aaron and Summer Conn when they showed up at his house. However, appellant's testimony alone will not conclusively prove self-defense as a matter of law because the jury is the judge of all of the evidence. *See London v. State*, 325 S.W.3d 197, 203 (Tex. App.—Dallas 2008, pet. ref'd.) (stating that the evidence was legally sufficient to convict appellant of murder despite his testimony when he shot multiple times at the victim who was driving away and no gun from the victim was ever found).

9

By his own admission, appellant did not call the police when he learned that Aaron and Summer were heading to his home. Once appellant fired his first warning shot, Aaron and Summer both turned to get back in their car. Appellant does not dispute that neither Conn attempted to approach him after the first warning shot. Furthermore, appellant testified that the Conns were both about "two or three car lengths" away from him and never any closer to him than that. Appellant did not mention during his testimony any other circumstance that would indicate that using deadly force was immediately necessary. See TEX. PENAL CODE ANN. § 9.31. Appellant testified in court that he felt "panic" due to his "concern that [Aaron and Summer] were getting a gun." He testified that even though Aaron "was shot in the leg and was laying on the ground," Aaron still had a knife in his hand and appellant "could have easily got stabbed."

Appellant testified that he recognized that Summer was dead in the passenger's seat of the car, but he continued to shoot "in the general direction" of the car. He also testified in open court that he shot Aaron in the head when Aaron was lying face down on the ground because appellant claimed he still felt threatened by him. Given that Aaron was facing the ground and appellant saw that his leg, among other parts of his body, had already been shot, the jury was entitled to conclude that his belief that deadly force was immediately necessary was unreasonable. See Kirk v. State, 421 S.W.3d 772, 781 (Tex. App.—Fort Worth 2014, pet. ref'd.) (holding that the evidence was sufficient for a jury to find against the appellant on the issue of self-defense beyond a reasonable doubt because appellant shot one of the victims in the back of his ear when he was falling to the ground or already on the ground). Furthermore, appellant's own testimony that he walked up to Aaron after he had already shot him and fired a final shot into the back of

10

his head, if believed by the jury, is further evidence negating his claim of self-defense. *See Johnson v. State*, 452 S.W.3d 398, 404 (Tex. App.—Amarillo 2014, pet. ref'd.) (finding that evidence that appellant walked up to the victim after shooting him once and shot the victim a second time in the back while he lay on the floor negated self-defense if believed by the jury); *Smith v. State*, 355 S.W.3d 138, 147 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd.).

Furthermore, appellant left his home shortly after killing the Conns and again failed to call the police. Flight from the scene of an offense is circumstantial evidence from which a jury may infer guilt. *See Miller v. State*, 177 S.W.3d 177, 184 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (stating that flight of the appellant, who claimed self-defense, immediately after a shooting constituted circumstantial evidence of his guilt). Appellant never told his parents or his brother that he killed the Conns because he feared for his safety. Although appellant testified that Aaron had pulled out a knife when he showed up at appellant's house, when Nathan asked him if the Conns were armed, appellant replied: "Not that I know of." Furthermore, Nathan testified that when he asked appellant why he killed the Conns, appellant answered, "[Aaron] was talking shit and said he was going to feed [me my] own bullets." Nathan gave two statements to the Orange Police Department about appellant's confession, but did not mention that appellant told them about Aaron's threat until trial. Neither appellant's mother nor his brother told the police that appellant told them that he killed the Conns because he was concerned about his safety.

Based on the foregoing, we hold that a rational jury could have rejected appellant's self-defense claim and found beyond a reasonable doubt that appellant intentionally and

11

knowingly caused the deaths of both Aaron and Summer Conn during the same criminal transaction. *See* TEX. PENAL CODE ANN. § 19.03(a)(7)(A); *see also Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). Under the facts of this case, we conclude that the evidence was legally sufficient to uphold appellant's conviction. Appellant's sole issue is overruled.

### III.    CONCLUSION

We affirm the judgment of the trial court.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
16th day of July, 2015.